GARY B. DONAHUE *v.* TOWN OF
SOUTHINGTON ET AL.
(SC 16497)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 30, 2001—officially released March 26, 2002

*Richard S. Bartlett*, for the appellants (defendants).

*Andrew J. Morrissey,* for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The principal issue presented in this appeal is whether General Statutes § 31-310 (b), which requires that the workers' compensation commission use certain wage tables in calculating the average weekly earnings of injured employees, is limited in its application to those individuals who have contributions under the Federal Insurance Contributions Act (FICA) withheld from their pay.[1] Because we hold that § 31-310 (b) is so limited, we also must address two additional issues, namely, whether the statute, as we interpret it, violates the equal protection clause of the fourteenth amendment of the federal constitution, and whether the named defendant, the town of Southington (town), has standing to raise such a constitutional challenge. We conclude that the town does have standing and that the statute is constitutionally sound. Accordingly, we uphold the decision of the compensation review board affirming the judgment of the workers' compensation commissioner (commissioner) in favor of the plaintiff, Gary B. Donahue.[2]

The following stipulated facts and procedural history are relevant to our resolution of this appeal. While employed by the town as a police officer, the plaintiff

---

[1] FICA is codified at 26 U.S.C. § 3101 et seq. FICA contributions include contributions to social security and medicare pursuant to 26 U.S.C. § 3101.

[2] The compensation review board awarded the plaintiff interest as required by General Statutes § 31-301c (b), which provides: "Whenever an employer or his insurer appeals a commissioner's award, and upon completion of the appeal process the employer or insurer loses such appeal, the Compensation Review Board or the Appellate Court, as the case may be, shall add interest on the amount of such award affirmed on appeal and not paid to the claimant during the pendency of such appeal, from the date of the original award to the date of the final appeal decision, at the rate prescribed in section 37-3a." Accordingly, we remand the case to the compensation review board to establish the rate of interest and to calculate the amount of the award of interest.

was injured in the performance of his official duties. The town's workers' compensation provider, the Connecticut Interlocal Risk Management Agency, which is also a defendant in this case, tendered a voluntary compensation agreement to the plaintiff. The compensation to be paid under this agreement was calculated using the wage tables promulgated pursuant to § 31-310 (b), which take into account amounts contributed to FICA. The plaintiff rejected the agreement, asserting that because he did not contribute to FICA,[3] his compensation rate should not be determined using the tables promulgated pursuant to § 31-310 (b).

Thereafter, the commissioner ruled that the compensation tables promulgated pursuant to § 31-310 (b) apply only to employees who contribute to FICA. Accordingly, the commissioner calculated the plaintiff's compensation rate using a "manual calculation method" rather than the statutory compensation tables.[4] As a result, the plaintiff received a higher level of compensation than he would have had his compensation rate been calculated using the tables promulgated pursuant to § 31-310 (b). The defendants appealed to the compensation review board, which affirmed the ruling of the commissioner. The defendants then appealed to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendants claim that § 31-310 (b) should be interpreted to apply to all injured employees, not just those who are subject to FICA withholding. The defendants further claim that if § 31-310 (b) is construed to

---

[3] The plaintiff contributed instead to a police pension fund.

[4] As a result of the commissioner's decision that the tables promulgated pursuant to § 31-310 (b) did not apply to the plaintiff, the plaintiff received weekly compensation in the amount of $585. The plaintiff's compensation rate calculated using the tables promulgated pursuant to § 31-310 (b) would have been $526.59 per week.

apply only to those employees who are subject to FICA withholding, the statute violates the equal protection clauses of the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution. We find these claims to be without merit.

I

The first issue that we address is the scope of § 31-310 (b), which requires the workers' compensation commission to promulgate wage tables pursuant to which workers' compensation benefits are calculated. The issue that we must decide is whether those tables are to be used in calculating the benefits of all injured employees, or whether the tables are applicable only to those employees whose income is subject to deduction for contribution to FICA.

We begin by setting forth the standard of review that governs our examination of this issue. "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the compensation] review board." (Internal quotation marks omitted). *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). However, "[w]e have determined . . . that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 261–62, 788 A.2d 60 (2002).

Prior to its decision in the present case, the compensation review board had never addressed the issue of whether the tables promulgated pursuant to § 31-310 (b) apply to all injured employees or only to those

employees who contribute to FICA. Furthermore, this issue has never been the subject of judicial scrutiny. Accordingly, we do not defer to the conclusion of the compensation review board.

Because the issue that we must decide—whether the rate tables promulgated by the workers' compensation commission pursuant to § 31-310 (b) apply to all injured employees or only to those employees who contribute to FICA—presents a question of statutory construction, our review is plenary. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999). When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994).

The defendants claim that the rate tables promulgated pursuant to § 31-310 (b) apply to all employees and are not restricted in their application to those whose incomes are subject to FICA withholding. Specifically, the defendants claim that under § 31-310 (b), employees whose incomes are not subject to a FICA deduction are treated as though the deduction was taken. The plaintiff argues that the plain language and legislative history of § 31-310 (b) indicate that the rate tables promulgated pursuant to that statute are applicable only to those employees who actually have a deduction taken for FICA contribution. We agree with the plaintiff.

We begin our analysis with the language of the statute in question. Section 31-310 (b) provides in relevant part: "[T]he chairman of the Workers' Compensation Commission, in consultation with the advisory board, shall publish tables of the average weekly wage and seventy-five per cent of the average weekly wage after being reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act . . . . Such tables *shall be conclusive* for the purpose of determining seventy-five per cent of the average weekly earnings of an injured employee *after such earnings have been reduced by any deduction* for federal or state taxes, or both, and for the federal Insurance Contributions Act *made from* such employee's total wages . . . ." (Emphasis added.)

The plain language of § 31-310 (b) indicates that the rate tables mandated therein apply only to those employees who actually have a FICA deduction taken from their income. Specifically, the phrases "have been reduced by any deduction" and "made from" indicate that the statute is applicable only to those employees who actually have a FICA contribution withheld from their income. There is no indication that the statute contemplates the use of the rate tables applying a hypothetical FICA deduction for those employees who are not subject to FICA withholding.

The defendants point to the language of the statute stating that the rate tables are "conclusive" in support of their argument that § 31-310 (b) applies to all employees. That language, however, when read in the context of the remainder of the statute, undermines rather than advances the defendants' position. The statute, as a whole, provides that the rate tables "shall be conclusive for the purpose of determining seventy-five per cent of the average weekly earnings . . . after such earnings *have been reduced by any deduction . . . made from*" an injured employee's total wages. (Emphasis added.)

General Statutes § 31-310 (b). Thus, as we concluded previously, § 31-310 (b), by its plain language, applies only to those employees who actually contribute to FICA.

Our conclusion is bolstered by the legislative history of § 31-310 (b). Subsection (b) was added to § 31-310 by the passage of No. 91-339, § 30, of the 1991 Public Acts. The legislative history of that act is silent on the question of whether the rate tables promulgated pursuant to § 31-310 (b) were intended to apply to all employees. In 1993, however, the legislature again amended § 31-310; see Public Acts 1993, No. 93-228 (P.A. 93-228); and the legislative history of that act is instructive for purposes of the present appeal. One proposed version of the bill that ultimately became P.A. 93-228 contained language that would have required that "earnings of employees who do not have deductions taken from their wages for [FICA] . . . be calculated as though the deduction had been taken." Proposed House Bill No. 6939, § 19, p. 35.

In hearings before the labor committee in 1993, Jesse Frankl, then chairman of the workers' compensation commission, testified as follows regarding the potential import of Proposed House Bill No. 6939: "Now, there are some employees in the state of Connecticut who don't pay Social Security who pay into some other fund on the basis of prior legislation by the legislature. We want to make [the wage calculation] conform and be uniform for all parties, so that we can use our tables . . . for all injured workers." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 4, 1993 Sess., p. 1212. Thus, Frankl implicitly recognized that the tables promulgated pursuant to § 31-310 (b) were being used to calculate the compensation rates only of those employees who actually contributed to FICA. He testified in favor of Proposed House Bill No. 6939 precisely because the language contained therein would have resulted in the uniform application of the

tables to all employees, including those who did not actually make FICA contributions.

Ultimately, however, Proposed House Bill No. 6939 was rejected. In discussing the version of P.A. 93-228 that eventually was adopted, Representative Michael Lawlor stated: "I wanted to clarify what exactly is in this amendment and what's not in this amendment because over the past month or so there's been quite a few different amendments floating around and I think there's been some confusion about what was in some of those and what's in this one." 36 H.R. Proc., Pt. 18, 1993 Sess., p. 6252. Lawlor stated further: "*There is no deduction for social security payments which are not paid by certain employees.* For example, some Connecticut State Police troopers do not pay into social security. *Some of the previous amendments that have been considered would have required a deduction for that amount, even though those employees do not pay into social security.*" (Emphasis added.) Id., pp. 6254–55. Thus, the legislature considered, and explicitly rejected, an amendment to § 31-310 (b) that would apply the rate tables promulgated pursuant to that statute to all injured employees. We cannot, by judicial fiat, interpret § 31-310 (b) in a way that effectively would insert into the statute language the legislature explicitly rejected. We therefore agree with the compensation review board that § 31-310 (b) does not apply to employees, such as the plaintiff, who do not contribute to FICA.

II

Because we conclude that the rate tables promulgated pursuant to § 31-310 (b) are applicable only to those employees whose incomes are actually subject to FICA deductions, we must address the defendants' claim that § 31-310 (b) violates the equal protection clauses of the fourteenth amendment to the United States constitution, and article first, § 20, of the Con-

necticut constitution. Before we address this issue, however, me must resolve the threshold issue of whether the town has standing to challenge the constitutionality of § 31-310 (b). The plaintiff argues that the town does not have standing because it is attempting to bring a constitutional claim on behalf of a third party and because it is a statutorily created entity. We find these arguments unpersuasive.

The plaintiff first claims that the town improperly is trying to assert the constitutional rights of a plaintiff. In advancing this argument, the plaintiff relies on "[t]he general rule . . . that a litigant may only assert his own constitutional rights or immunities." *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 49, 357 A.2d 472 (1975).

In the present case, the town claims that it has been injured by the operation of § 31-310 (b). Specifically, the town claims that it has sustained economic injury as a result of the operation of § 31-310 (b), because it has been required unconstitutionally to pay a higher level of compensation to the plaintiff than it would pay if his compensation were calculated in accordance with the wage tables promulgated pursuant to § 31-310 (b). Thus, the town is clearly basing its claim on its own injury, rather than the injury of the plaintiff or some third party. That is a sufficient stake in the outcome of this case to confer standing upon the town.

The plaintiff next contends that the town, as a statutorily created entity, cannot challenge the constitutionality of a statute. We disagree. "The issue of standing arises out of the perceived inconsistency of allowing a municipality, which is a creation of state legislation, to challenge the constitutionality of other acts of legislation by its creator." *Connecticut Light & Power Co.* v. *Norwalk*, 179 Conn. 111, 114, 425 A.2d 576 (1979). This court previously has held "as a general rule that [t]owns

. . . are creatures of the state, and though they may question the interpretation, they cannot challenge the legality, of legislation enacted by their creator." (Internal quotation marks omitted.) *Berlin* v. *Santaguida*, 181 Conn. 421, 424, 435 A.2d 980 (1980). However, "[a]n exception to this rule has been carved out to allow a municipality, adversely affected by a statute, which is properly in court on a nonconstitutional question to challenge the constitutionality of that statute." Id.

We conclude that the facts of this case fall squarely within the exception to the general rule articulated previously. The town in this case is litigating a nonconstitutional issue, namely, the proper construction of § 31-310 (b), and is affected adversely by our construction of that statute. Thus, as this court previously has stated, "a municipality that is in court on nonconstitutional questions, as to which this question of standing is not a barrier, often has a legitimate stake in full exploration of the constitutionality of contested legislation." *Connecticut Light & Power Co.* v. *Norwalk*, supra, 179 Conn. 115. Therefore, the town has standing to challenge the constitutionality of § 31-310 (b).

We turn now to the defendants' contention that § 31-310 (b), as we have interpreted it, violates the equal protection clauses of the fourteenth amendment to the United States constitution[5] and article first, § 20, of the Connecticut constitution.[6] Specifically, the defendants claim that the classification established by § 31-310 (b),

[5] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[6] Article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

under which employees whose incomes are subject to FICA deductions ultimately receive a lower rate of compensation than those employees who are not subject to such deductions, is arbitrary and without a rational basis. We disagree.[7]

"We note at the outset that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional . . . ." *Faraci* v. *Connecticut Light & Power Co.*, 211 Conn. 166, 168, 558 A.2d 234 (1989).

"In order to analyze the constitutionality of [the challenged statutory scheme], we must first detail the principles applicable to equal protection analysis. When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge."

---

[7] The defendants have offered no analysis asserting that the equal protection clause of the state constitution offers greater protection than the federal equal protection clause. "If a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart . . . we will not of our own initiative address that question. . . . Accordingly, the federal equal protection standard is considered prevailing for the purposes of our review of both the state and federal equal protection claims in this case." *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 812–13 n.15, 730 A.2d 1149 (1999).

(Internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 813–14, 730 A.2d 1149 (1999).

It is undisputed that the legislation at issue neither creates a suspect classification nor impinges upon a fundamental right for the purposes of the equal protection clause. Thus, we analyze the defendants' constitutional challenge to § 31-310 (b) utilizing the familiar rational basis test.

Our analysis under the rational basis test is well settled. We must "decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. *Zapata* v. *Burns*, 207 Conn. 496, 507, 542 A.2d 700 (1988); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577, 512 A.2d 893 (1986). In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368 (1980), reh. denied, 450 U.S. 960, 101 S. Ct. 1421, 67 L. Ed. 2d 385 (1981)], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222 (1981)], and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, [473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]. *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992). . . . *Florestal* v. *Government Employees Ins. Co.*, [236 Conn. 299, 314–15, 673 A.2d 474 (1996)]." (Internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*,

supra, 248 Conn. 814–15. We emphasize that under this analysis, the legislature is not required to articulate the purpose or rationale for its classification. "The test . . . is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Emphasis in original; internal quotation marks omitted.) Id., 817.

We begin our analysis with a brief review of the function of § 31-310 (b). This statute requires that workers' compensation benefits for employees whose incomes are subject to a FICA deduction be calculated using certain wage tables promulgated by the workers' compensation commission. The statute specifies that the calculations be made after the employees' income is reduced for federal and state taxes and for contributions to FICA. As we discussed previously herein, however, those tables are not applicable to employees, such as the plaintiff, who do not contribute to FICA. See part I of this opinion. Those employees, instead of contributing to FICA, contribute to pension or other retirement plans, or make no pension or retirement contributions at all. There is, however, no statutory mechanism that provides for the deduction of those contributions in calculating workers' compensation benefits for those employees. As a result, employees who do not contribute to FICA receive a somewhat higher rate of compensation than those who do. The defendants argue that this result is arbitrary and irrational in violation of the equal protection clause. We disagree.

The most recent data compiled by the Office of Research, Evaluation and Statistics of the Social Security Administration indicate that in 1998, the overwhelming majority of employees who resided in Connecticut—approximately 96.1 percent of them—contributed to FICA. Because the amount of this contri-

bution is fixed and predetermined, promulgating rate tables that take into account the amount of the FICA contribution in calculating compensation rates is a simple matter.[8]

As the defendants point out, however, there are many different categories of employees who do not contribute to FICA.[9] Instead, these employees contribute to various pension plans other than FICA, and the amount of the contribution differs depending upon the type of pension plan in which the employee participates. If the amount of each employee's contribution were to be deducted in order to calculate the compensation rate, the calculations would have to be made on a case-by-case basis, using a formula that takes into account this variety of contribution amounts.

The legislature rationally could have decided that it would be inefficient and unduly burdensome to require the case-by-case deduction of contribution amounts in calculating compensation rates for these employees. The rationality of this decision is borne out by the fact that, as we discussed previously, the scheme established by § 31-310 (b) actually applies to the great majority of workers in Connecticut. Thus, the legislature could have concluded that the relatively small economic benefit that would result from requiring that the various pension contributions of all employees be deducted in calculating compensation amounts would be outweighed by the difficulty of administering such a scheme. As this court has recognized, the legislature

[8] FICA contributions are fixed at 6.2 percent for social security and 1.45 percent for medicare pursuant to 26 U.S.C. § 3101.

[9] For example, town teachers hired subsequent to 1986 do not contribute to social security and contribute 1.45 percent to medicare. The town's police officers do not contribute to social security but instead contribute 6 percent of their gross income to the police pension fund. Police officers hired prior to 1986 do not contribute to medicare, while those hired subsequent to 1986 contribute 1.45 percent to medicare.

has a legitimate interest in ensuring the efficient administration of the workers' compensation system. See *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 145, 717 A.2d 747 (1998).

Because there is a plausible reason for the legislature's action, the fact that this scheme ultimately results in a somewhat higher compensation rate for certain employees is of no constitutional import. See *Faraci* v. *Connecticut Light & Power Co.*, supra, 211 Conn. 169. "[W]e emphasize that, like the United States Supreme Court, we have consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits." (Internal quotation marks omitted.) Id.

The defendants further argue that the purpose of § 31-310 (b) is to reduce the costs of the workers' compensation system. They claim that the classification established by § 31-310 (b) is irrational because it actually hinders this purpose by not requiring that FICA equivalent amounts be deducted when calculating the compensation rate of employees whose incomes are not subject to FICA deduction. We disagree.

As we discussed previously herein, § 31-310 (b) applies to the overwhelming majority of Connecticut employees. Thus, it stated that the classification established by that statute thwarts the legislative purpose of reducing costs when the statute actually applies to such a large percentage of Connecticut employees.

The defendants' arguments, if accepted, would require the legislature, as a matter of constitutional mandate, to choose between establishing a scheme that provides for the deduction of FICA and pension contributions for all employees when calculating compensation benefits, or not establishing such a scheme at all. That is the kind of choice that both this court and the

United States Supreme Court have held repeatedly that a legislature, in the area of social and economic policy-making, is not required to make under the equal protection clause. "As the United States Supreme Court has reminded us, a state, consistent with the equal protection clause, may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . . Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. [T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." (Internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 248 Conn. 818–19.

We therefore conclude that § 31-310 (b) does not violate the equal protection clause of the fourteenth amendment to the United States constitution.

The judgment is affirmed and the case is remanded to the compensation review board with direction to establish the rate of interest and to calculate the amount of the award of interest pursuant to General Statutes § 31-301c (b).

In this opinion the other justices concurred.