[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, the owner of two rental residential properties located in the Town of Fairfield, Connecticut has filed this lawsuit to void a 1992 Fairfield municipal ordinance now regulated by the Health Department of Fairfield.
 ISSUE
Is the portion of Regulation 3.3 of the Health Regulations of Fairfield requiring landlords to file an application for a Certificate of Rental Occupancy (CRO) containing certain tenant information, void or in violation of the Federal and/or State constitutions?
 FACTS
After considering the evidence and exhibits, the court finds the following facts:
Stepney L.L.C., a Connecticut limited liability corporation, is the owner of multiple parcels of real property located in Fairfield County; two are single family rental residential properties located in the Town CT Page 6332 of Fairfield. The first is the house at 989 Fairfield Beach Road with nine rooms, seven bedrooms and 3, 500 square feet of living space. 989 has been owned by the George W. Ganim, Sr., family since 1965. The second is the house at 1019 Fairfield Beach Road with eight rooms and five bedrooms. 1019 has been owned by the George W. Ganim, Sr., family since 1989. Stepney L.L.C. is the successor in title to both properties and is a Ganim family corporation. George W. Ganim, Sr., is its chief officer.
989 was occupied by the 10 member George W. Ganim, Sr. family until 1990. For more than the past ten years both 989 and 1019 have been rented to third parties. Both properties are located directly on the Fairfield beach and the waters of Long Island Sound. Both properties are currently rented in the same fashion to third parties. During the months of June, July and August, they are rented to private families for use as summer vacation homes. For the months of September through May, a second set of tenants occupy the two houses, usually students enrolled at Fairfield University, renting each house in a private capacity as their residence while they attend college.
In 1972 the Town of Fairfield enacted Regulation 3.3 adopting the current Certificate of Rental Occupancy (CRO) Regulation. The entire regulation now reads as follows:
 No person, firm, corporation, or agent thereof, shall rent to another or permit the occupation by another, of any dwelling until a Certificate of Rental Occupancy has been issued by the Director of Health. Any certificate so issued shall state that the dwelling to be occupied complies with all provisions of this Code.
 The fee for said Certificate of Rental Occupancy (CRO) shall be twenty-five ($25.) dollars for each dwelling unit occupied. No person filing an application for a CRO shall make any false statements concerning but not limited to the names, ages, relationship or number of persons who will occupy a dwelling unit or any other information requested on said application form or by the Director of Health.
 A CRO shall be valid for a minimum of six (6) months. The CRO continues to be valid following the six-month period provided there are no changes in tenancy. Any changes in tenancy following the six-month period require a new CRO application and inspection as required by this section.
 Whenever any dwelling unit is rented during the summer months and the Director of Health determines that said unit is unfit for habitation during the winter season, he may issue a provisional rental occupancy certificate so stating. No person, firm, corporation, or agent thereof CT Page 6333 shall rent to another, or permit the occupation by another, of any such dwelling unit for occupancy for any period other than the months of May, June, July, August, September and October.
 Any person, firm or corporation, or agent thereof, who violates any of the aforesaid provisions shall be subject to the penalty provided for violations of the regulations of this Code. Each person participating in violation of the aforesaid provisions may be considered to have committed a separate offense. Each day during which any violation of the aforesaid provisions continues may be considered a separate offense.
In 1999, the regulation was amended to add at the end of the second paragraph the additional phrase "or any other information requested on said application form or by the Director of Health." Pursuant to Regulation 3.3 the Director of Health prepared a Certificate of Rental Occupancy Application form. See CRO Application form attached to trial Exhibits 2 and 3.
There are two pages to the CRO Application form. The plaintiff has no objection to providing the information requested on the first page of the CRO Application form. This includes the rental property address, the owner's name, the owner's mailing address, the owner's home phone, the owner's office phone, the home address and phone of any "Agent or other Applicant." The plaintiff will also sign the certification clause in the first page, which states:
 I hereby request permission to rent the above-referenced property in the Town of Fairfield as a dwelling unit(s). I certify that the answers contained herein are true and accurate in all respects and that the dwelling conforms to all health, building, fire and zoning regulations, ordinances and statutes. I further certify that I will not permit such rental property to be occupied in violation of occupancy limitation. I understand that such certificate may be suspended or revoked and that any person who violates any such regulation shall be fined not more than one hundred ($100) dollars or be imprisoned not more than six months, or both, for each offense. Each day during which any violation of the said code provisions continue may be considered a separate offense. False statements made herein are punishable as a Class A misdemeanor pursuant to Section 53A-157 of the Connecticut General Statutes.
The second page of the CRO Application form is entitled "Tenant/Occupant Information." The plaintiff will not provide the information requested on the second page, including the tenant's name and the tenant's vehicle license plate number. Each tenant is also required CT Page 6334 to sign the certification clause in the second page, which states:
This section is to be read and signed by tenant/occupant(s).
 I (we) the tenant/occupant(s) of the dwelling (unit) located at _____ Fairfield, Connecticut certify that I (we) will comply with applicable regulations, ordinances, and statutes. I (we) further certify that said property will not exceed occupancy limitation. I understand that any person who violates any such regulation shall be fined not more than one hundred ($100) dollars or be imprisoned not more than six months, or both, for each offense. Each day during which any violation continues may be considered a separate offense. False statements made herein are punishable as a Class A misdemeanor pursuant to Section 53A-1 57 of the Connecticut General Statutes.
Despite the language of Regulation 3.3, the CRO Application form does not require the furnishing of the tenant's "ages, relationship or number of persons who will occupy a dwelling unit." The plaintiff will not permit the signing of the second page certification clause.
From 1972 until 1999 the plaintiff and its predecessor in title complied with the CRO regulation. Applications were completed and signed. The usual procedure was that upon the submission by the plaintiff of the CRO Application form with the fee, a personal inspection of the premises would be conducted by the Health Department. In the event that violations of the health code were found, a notification letter would be sent to the owner by the Health Department. The owner would be given an opportunity to correct the deficiencies. Upon notification that the corrections had been made, a follow-up inspection would be made by the Health Department. A CRO would be issued when the inspection, either initial or follow-up, showed no deficiencies. The plaintiff and its predecessor in title complied with those requirements. Whenever inspections revealed needed repairs, those repairs were made and CROs were always issued by the Health Department each year from 1972 until 1998 for both 989 and 1019.
In 1999 and 2000 the plaintiff refused to file a CRO Application form. The Health Department issued an Order to Comply on July 18, 2000. Exhibit 4. The Order to Comply contained a penalty threat: "Any person who violates any such regulation shall be fined not more than one hundred ($100.00) dollars or be imprisoned not more than six months, or both, for each offense. Also, as provided in the Connecticut General Statutes, Sections: 19a-36, 19a-206, and 19a-230." The order contained a rights of appeal form pursuant to Connecticut State Regulations §§ 19a-9-8 and19a-9-14. To date, the plaintiff has not filled any application for a CRO. Penalty proceedings have been held in abeyance by the defendant CT Page 6335 until this lawsuit is resolved.
The penalty threat did not delineate the authority for imposing a penalty of "one hundred ($100.00) dollars or be imprisoned not more than six months." Regulation 3.3 contains no specific penalty. It merely states that a person who violates "shall be subject to the penalty provided for violations of the regulations of this Code." No other code regulations are referred to in the penalty section. The Public Health Code of the Town of Fairfield was offered in evidence. Exhibit 7. Section 1.6 of that Public Health Code states: "Any person who violates any such regulation shall be fined not more than one hundred ($100.00) or be imprisoned not more than six months, or both, for each offense. Each day during which any violation of said code provisions continues may be considered a separate offense."
General Statutes § 19a-36 (a) provides: "Any person who violates any provision of the Public Health Code shall be fined not more than one hundred dollars or imprisoned not more than three months or both." This statutory reference to the "Public Health Code" refers to a Code adopted by the Commissioner of Public Health of the State of Connecticut, not municipal health codes.
General Statutes § 19a-206 provides for the imposition of civil penalties by municipal directors of health. The municipal director of health can institute a civil action to abate a health violation and "the owner or occupant of such property, or both, shall be subject to a civil penalty of two hundred fifty dollars per day for each such nuisance is maintained. . . ." General Statutes § 19a-206 (b)(2). In addition, "the owner or occupant of such property, or both, shall be subject to the provisions of sections 19a-36, 19a-220 and 19a-230."
General Statutes § 19a-220 provides that a judge of the Superior Court may issue a warrant to a proper officer stating the legal order given by a director of health and requiring the proper officer to carry the order into effect and execute the order.
General Statutes § 19a-230 is a general fine and penalty clause stating: "Any person who violates any provision of this chapter or any legal order of a director of health or board of health, for which no penalty is provided, shall be fined not more than one hundred dollars or imprisoned not more than three months or both."
This court concludes that no state statute authorizes an imprisonment of six months as threatened by Exhibit 4. No state statute authorizes an imprisonment penalty for each day the code is in violation. No state statute authorizes the Town of Fairfield to impose the six months CT Page 6336 imprisonment in addition to a fine with each day considered a separate offense. See Exhibit 7, Section 1.6 Public Health Code of the Town of Fairfield. This court concludes that the penalties set forth in Regulation 3.3, the CRO Application form and the Public Health Code of the Town of Fairfield are not authorized by state statute.
The plaintiff only contests that portion of Regulation 3.3 requiring the owner and tenant to sign an application form disclosing the tenant's name, age, relationship and the tenant's vehicle license plate number. In all other regards the plaintiff will comply with Regulation 3.3. It will not rent to anybody without a CRO. It will comply with the CRO filing requirements and pay the fee. It will permit inspection of the entire premises. It will sign the CRO Application form on the first page and certify that the dwelling complies with all provisions of the Code. The plaintiff does not agree that the penalty clause on the first page certification is an accurate statement of the law but the plaintiff recognizes that there is a monetary and incarceration penalty for the violation of the Public Health Code of the Town of Fairfield.
The second page of the CRO Application form contains a clause indicating whether or not the property will conform to the zoning and health rules during the period of occupancy. This is the same certification as contained on the first page. The second page certification does not require the plaintiff's signature. The plaintiff will not furnish the tenant's name nor the tenant's vehicle license plate number and will not obtain the tenants' signature on the CRO Application form. It is this unwillingness that is at the heart of this lawsuit.
The plaintiff is not claiming that the property qualifies as a boarding house or a rooming house. The zoning regulations of the Town of Fairfield permit summer occupancy by one family and the occupancy by students of Fairfield University from September through May. The maximum occupancy for 989 Fairfield Beach Road by court decree is five unrelated occupants. The maximum occupancy for 1019 Fairfield Beach Road is four unrelated occupants. The plaintiff will comply with these occupancy limitations and will sign certificates to that effect as well as permit inspection by municipal authorities as permitted by law.
Further facts will be found during discussion of other portions of this decision.
 THE PLAINTIFF'S CONTENTIONS
The Plaintiff's Trial Brief dated September 18, 2001 advances six separate reasons why Regulation 3.3 is not valid. CT Page 6337
"1. The enactment of Regulation 3.3 was illegal in that the Town of Fairfield, through its Department of Health, exceeded the power granted to it by C.G.S.A. § 19a-207.
2. Regulation 3.3 violates an individual's right to free speech by requiring rental property owners to provide certain information about his/her property.
3. Regulation 3.3 violates the Plaintiff's fundamental right to privacy by requiring the disclosure of personal information.
4. Regulation 3.3 is unconstitutional in that is overly broad and vague.
5. Regulation 3.3 violates the Equal Protection clauses of both the State of Connecticut Constitution and the United States Constitution in that it is not applied to all property owners in the Town of Fairfield.
6. The unbridled discretion of the director of health renders Regulation 3.3 unconstitutional."
The parties have briefed each of these arguments citing numerous Connecticut and foreign authorities.
The court should not reach a constitutional issue if the matter can be decided on other grounds. "In analyzing the constitutionality of a statute, the court will read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." In reShane P., 58 Conn. App. 244, 254 (2000). "[L]egislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." State v. Angel C., 245 Conn. 93, 102 (1998). "In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." State v. Quinet, 253 Conn. 392, 415 (2000). "We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute."Blakeslee Arpaia Chapman, Inc. v. El Constructors, Inc., 239 Conn. 708,754 (1997).
"This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will CT Page 6338 dispose of the case. . . . The best teaching of this Court's experience admonish us not to entertain constitutional questions in advance of the strictest necessity. Parker v. Los Angeles, 338 U.S. 327, 333,70 S.Ct. 161,94 L.Ed. 144 (149)." Kish v. Cohn, 59 Conn. App. 236, 242 (2000) "We ordinarily read statutes to avoid, rather than to create, constitutional questions." Castagno v. Wholean, 239 Conn. 336, 344 (1996). Plaintiff's issues 2 through 6 impact the constitutionality of Regulation 3.3. This court need not address those five issues since the matter at hand can be decided on issue 1: "The enactment of Regulation 3.3 was illegal in that the Town of Fairfield, through its Department of Health, exceeded the power granted to it by C.G.S.A. § 19a-207."
 DISCUSSION OF LAW
The defendant is the Town of Fairfield. It is a Connecticut municipality, a municipal corporation. A municipal corporation has only powers expressly conferred upon it by the general statutes or by special act and those which are found to be implied or necessary to carry into effect powers expressly given. Blue Sky Bar, Inc. v. Stratford,203 Conn. 14, 16 (1987). "It is settled law that as a creation of the state, a municipality has no inherent powers of its own." Norwich v.Housing Authority, 216 Conn. 112, 123 (1990). A town is not a sovereign. A town has no sovereign immunity. It may sue and be sued. Murphy v.Ives, 151 Conn. 259, 264 (1963). "Municipalities, because they are creation of the state, have no inherent legislative authority. . . . Rather, the legislative authority of municipalities derives solely from express legislative grants. . . . Buonocore v. Branford, 192 Conn. 399,401, 471 A.2d 961 (1984)." Modern Cigarette, Inc. v. Orange, 256 Conn. 105,134 (2000).
The general rules as to the validity of a municipal ordinance are well settled. "First, it is undisputed that `[t]he challenged ordinance is an exercise of the police power conferred upon the town by statute. There is no doubt that the town has a right to regulate a business, pursuant to its police power, in the interest of protecting the public safety or the welfare of its inhabitants. . . . Any such regulation, however, must be reasonably calculated to achieve that purpose; it must have a rational relationship to its objective. . . . The State may regulate any business or the use of any property in the interest of the public welfare or the public convenience, provided it is done reasonably The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions. . . . Whether the times and conditions require legislative regulation, as well as the degree of that regulation, is exclusively a matter for the judgment of the legislative body. . . . Courts can interfere only in those extreme cases where the action taken is CT Page 6339 unreasonable, discriminatory or arbitrary. . . . Every intendment is to be made in favor of the validity of [an] ordinance and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt. . . ." Blue Sky Bar,Inc. v. Stratford, supra, 203 Conn. 22-23. "[T]his strong presumption of legislative validity is overcome only when it plainly appears that the terms of the legislation are not reasonable or that they are not rationally adapted to the promotion of public health, safety, convenience, or welfare . . . The party challenging the enactment bears the burden of overcoming this presumption."Bower v. D'Onfro, 38 Conn. App. 685, 694-95 (1995).
"As a creature of the state, the town . . . can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." Upjohn Co. v. Zoning Board of Appeals,224 Conn. 96, 100 (1992). "In other words, in order to determine whether a regulation. . . . was within the authority of the commission to enact, we do not search for statutory prohibition against such an enactment; rather, we want to search for statutory authority for the enactment." Id. "The power of the city to enact an ordinance depends primarily on whether the ordinance is in harmony and consistent with the power delegated to it by the state." Bredice v. Norwalk, 152 Conn. 287, 292
(1964). "In the construction of a statute, effect should be given to the purpose behind it." State ex rel. Sloane v. Reidy, 152 Conn. 419, 423
(1965).
"The test is whether a reasonable need to serve some phase of public health, safety or general welfare makes a regulatory legislation necessary or desirable, and whether the legislation challenged serves that need in a reasonable manner." Hartland v. Jensen's, Inc.,146 Conn. 697, 703 (1959).
"The functions and authority of a municipal officer are derived solely from constitutional, statutory or municipal provisions and must be expressly provided for or fairly implied." Grasso v. Zoning Board ofAppeals, 69 Conn. App. 230, 235 (2002). "When a general power is given to a municipal officer, whatever is necessary for effective exercise of power is, in the absence of express authority, conferred by implication."Hartford v. American Arbitration Assn., 174 Conn. 472, 479 (1978).
The following are examples of these rules applied to various municipal ordinances. Avonside, Inc. v. Zoning and Planning Commission,153 Conn. 232, 236 (1965) (Regulation imposing a development fee void);Baker v. Norwalk, 152 Conn. 312, 314 (1965) (City cannot by ordinance enlarge a grant of power from the General Assembly. The statutory CT Page 6340 definition of a public place cannot be enlarged by the town to authorize the construction of a city hall in a public park); Bredice v. Norwalk,152 Conn. 287, 292 (1964) (Town had no authority to create a law department by local ordinance even though it could appoint corporation counsel); Builders Service Corp. v. Planning Zoning Commission,208 Conn. 267, 306 (1988) (Minimum floor area regulation held invalid since there is no evidence demonstrating a rational relationship between the challenged regulation and the statutory powers of zoning established by General Statutes § 8-2); Old Colony Gardens v. Stamford,147 Conn. 60, 63 (1959) (Municipal rent control ordinance void since general statutory powers were insufficient to authorize such municipal ordinances); Grasso v. Zoning Board of Appeals, 69 Conn. App. 230, 236-37
(2002) (Chairman of Zoning Board has no authority to discuss appeal to Board on technical grounds; only the Board itself had that power).
In the main, municipal statutory powers are contained in General Statutes 7-148. "Scope of Municipal Powers." Concerning public health and safety, a municipality may: "Make and enforce police, sanitary or other similar regulations and protect or promote the peace, safety, good government and welfare of the municipality or its inhabitants." General Statutes § 7-148 (c)(7)(H) (xiii).
The Health Department is an agency of the Town of Fairfield. The statutes of Connecticut have empowered local health departments to enact certain sanitary rules, regulations and ordinances. "Towns, cities and boroughs may retain the power to adopt, by ordinance, sanitary rules and regulations, but no such rule or regulation shall be inconsistent with the Public Health Code as adopted by said commissioner." General Statutes § 19a-207. This statute contains no definition of "sanitary rules and regulations." The municipal director of health derives their power from General Statutes § 19a-200 (a): "Such director of health shall have and exercise within the limits of the city, town or borough for which such director is appointed all powers necessary for enforcing the general statutes, provisions of the Public Health Code relating to the preservation and improvement of the public health and preventing the spread of diseases therein."
Dictionary definitions indicate that "sanitary" and "health" relate to physical or mental well being and freedom from disease relating to the whole body. Webster's New Collegiate Dictionary (1958) p. 149. No other statute or special act has been cited to this court as the authority for Regulation 3.3 other than General Statute § 19a-207. To be enforceable, municipal regulations promulgated for use by municipal health authorities must be limited to "sanitary rules and regulations."
The plaintiff claims that the following section of Regulation 3.3 is CT Page 6341 not derived from the statutory sanitary or health authority granted to the Fairfield Health Department by General Statutes § 19a-207. "No person filing an application for a CRO shall make any false statements concerning but not limited to the names, ages, relationship or number of persons who will occupy a dwelling unit or any other information requested on said application form or by the Director of Health." The defendant claims that, "The purpose of section 3.3 is to preserve and protect the public health through the regulating of rental dwellings and the information required by the CRO application, is essential to assist in this effort. Enabling the director of health to ask `any other information' deemed necessary provides for flexibility in achieving results and deterring potentially dangerous overcrowding situations in rental dwellings." Defendant's Trial Brief, January 4, 2002, pages 19-20.
The plaintiff concedes that excessive occupancy of a residential property is a proper municipal function within the care, custody and control of both the zoning authorities and the health department. Congested premises can be unhealthy and unsanitary. The plaintiff further concedes that the Health Department of the Town of Fairfield is within its statutory power in regulating the number of individuals occupying a residential property and conducting periodic inspections at intervals of buildings.
The plaintiff claims that the Town of Fairfield has the authority to regulate excessive occupancy through its zoning regulations. The parties agree that the limits of occupancy established by the Fairfield zoning regulations is five unrelated individuals for 989 Fairfield Beach Road and four unrelated individuals for 1019 Fairfield Beach Road. The plaintiff concedes it is limited to those numbers of individuals for occupancy purposes. The defendant is not claiming that the zoning occupancy, five for 989 and four for 1019, violates the sanitary and health code. There is no evidence that occupancy by either four or five unrelated college students living in a five or seven bedroom house somehow violates the health or sanitary codes by reason of excessive occupancy.
 CONCLUSION OF LAW
Regulation 3.3 contains six categories of information which must be contained within a CRO Application: (1) each tenant's name, (2) each tenant's age, (3) each tenant's relationship to the other tenants and landlord, (4) the total number of tenants, (5) the vehicle license plate number for each tenant as requested by the Director of Health on the CRO Application form and, (6) the signature of each tenant verifying the accuracy of the furnished information. The court will discuss each of CT Page 6342 these six categories.
(1) The court concludes that the names of tenants is not a health or sanitary issue. The Health Department of the Town of Fairfield has no authority to adopt Regulation 3.3 requiring the disclosure of names on any form or the disclosure of names by either the tenant and/or landlord. The Town of Fairfield is not authorized under General Statutes § 19a-207 to enact such a regulation.
(2) The age of the tenants again has no relationship to sanitary and health for the reasons stated above. Although Regulation 3.3 authorizes the disclosure of the tenant's age, the CRO Application form does not request the furnishing of this information. The issue of the disclosure of the tenants' age is therefore moot.
(3) The occupant's relationship to each other is a zoning issue and not a sanitary or health issue. The provision of occupancy limitation of "unrelated individuals" is a common zoning rule found throughout Connecticut zoning regulations. Dinan v. Board of Zoning Appeals,220 Conn. 61, 62-63 (1991) ("We conclude that there are sufficient reasons relevant to the objectives of zoning set forth in 8-2 to justify the distinction made by 1.18 between a family of related persons and the group of ten unrelated individuals who occupy the plaintiff's property."); Planning and Zoning Commission v. Synanon Foundation,153 Conn. 305, 309 (1966); Neptune Park Assn. v. Steinberg, 138 Conn. 357,363 (1951); Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536,39 L.Ed.2d 797 (1974); Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932,52 L.Ed.2d 531 (1977). In prior litigation between these two parties, the limits of occupancy were established by court decision as five unrelated individuals in 989 Fairfield Beach Road and four unrelated individuals at 1019 Fairfield Beach Road. There is no evidence to indicate that the plaintiff will fail to comply with those limitations. Compliance with those limitations on the face of it, based upon the large size of the house and the number of bedrooms and bathrooms could not possibly impact any sanitary or health concerns enunciated by the defendant. Although Regulation 3.3 authorizes the disclosure of the tenant's relationship, the CRO Application form does not request the furnishing of this information. The issue of the disclosure of the tenant's relationship to one another and to the owner is therefore moot.
(4) The number of persons who will occupy a dwelling unit is a health or sanitary issue. The Health Department does have the right to ask for that information in written format. The specifics of the identity of the occupying individuals have no health or sanitary impact. The first page of the CRO Application form requests that the owner certify in writing that the occupancy limitation standards will be complied with. The CT Page 6343 plaintiff will continue to sign the first page of such a CRO Application form, will continue to certify that occupancy is within the legal limitation, will continue to permit any agency of the Town of Fairfield access to the premises for inspection and will continue to enforce any violation by the tenants of the occupancy limitations. Therefore, the number of individuals who are going to occupy is not necessary for the CRO Application form, providing the owner signs a certification on its first page that the zoning regulations will be complied with by the owner.
In addition to determining if overcrowding has occurred, the defendant offered evidence that the following other health considerations can be determined by inspection: lead paint, minimum air space requirements, minimum heating standards, minimum ventilation standards, fire safety issues such as smoke detectors. The defendant did not argue to the court how the signature of a tenant, his name, age, motor vehicle registration or relationship to the landlord or other tenant has any relationship to these health considerations and how the providing of that information can alleviate those health concerns. Inspections of the premises can help identify and alleviate those health concerns and the plaintiff has not objected to any inspection by any Town or State agency.
The defendant argues that such occupancy information is necessary to determine if the premises is a rooming house/boarding house. This is a strawman argument. The premises are single family with an occupancy limit set by court decisions. The interior CRO inspection will reveal all necessary information to enforce the occupancy limit. The CRO registration information is of no further help to the Town of Fairfield.
(5) The information relating to tenant's motor vehicles has nothing to do with sanitary or health issues. Evidence was offered to demonstrate that it is easier to count motor vehicles outside than it is to count the number of individuals who are inside. The number of tenants inside will be difficult to count in either event since there will be guests, relatives and other people on the property. Examples are overnight guests, day and evening social occasions, study groups, a club or sports team meetings. Thus the same difficulty occurs if an exterior automobile count is being made. This court is not convinced that the listing of tenant's automobile registration will result in a more accurate determination of excessive occupancy. Automobile registration is not a sanitary or health issue. It is a method of enforcing the number of individuals occupying the premises and as such has no place in the municipal health code.
Furthermore, the Regulation 3.3 does not give the Health Department the authority to ask for vehicle identification numbers. The health CT Page 6344 director, by putting that information on the second page of the CRO Application form exceeded his authority. No statute gives the health director such authority under Regulation 3.3. In addition, Regulation 3.3 is vague: "Or any other information requested on said application form or by the director of health." This court believes that the director of health, by adding the automobile information request, exceeded the authority under Regulation 3.3. Castro v. Vieira, 207 Conn. 420, 428
(1988).
(6) The signature by tenants verifying the CRO information does not create an additional sanitary or health issue.
The complete charter of the Town of Fairfield was in evidence. Exhibit 10. It contains the duties of the director of the health department and the duties of the director of the board of health of the town; Section 9.18 relates to the Director of Health and Section 10.9 relates to the Board of Health and Public Health Department. The Director of the Fairfield Board of Health, Mr. Arthur Leffert, testified. This court is satisfied that he is authorized to perform the duties of director of Town of Fairfield Health Department, under Exhibit 10, the town charter and General Statutes § 19a-200. His authority originates from the charter, the rules and regulations of the board of health, ordinances of the town and the state statutes, including Chapter 368e.
This court has already determined that General Statutes § 19a-207
does not authorize the tenant information requested under Regulation 3.3, and that Regulation 3.3 did not authorize the Director of Health to ask for the automobile registration information. This court has examined the entire charter and finds no authority for either Regulation 3.3 or the automobile information to be requested. Section 10.9 of the Town of Fairfield Charter relating to the powers and duties of the Board of Health and the Public Health Department states: "The Board of Health may make and amend such reasonable rules and regulations as the preservation of the public health and sanitation shall require, provided the same shall not be inconsistent with the General Statutes, the state public health code, other state departmental regulations, or the ordinary and public health code of the Town." This court finds that Regulation 3.3 is inconsistent with General Statutes § 19a-207 and is void.
Mr. Leffert testified that Regulation 3.3 was passed in 1972 based upon the 1969 National Public Health Association, Center for Disease Control Model Code. Mr. Leffert brought the 1969 Model Code to court and used it in his testimony. The Model Code was not offered into evidence. When asked what section of the 1969 Model Code was Regulation 3.3 based, he replied: "I believe Section 12 has similar language." Upon further inquiry Mr. Leffert testified that the 1969 Model Code is very general in CT Page 6345 scope and does not reference the names of tenants/occupants, their ages, relationship or vehicle registration number. He also testified that the 1969 Model Code contains no requirement that the owners must provide any tenant/occupant information. Mr. Leffert so testified after closely examining the Town of Fairfield Public Health Code, Regulation 3.3 and the 1969 National Public Health Association, Center for Disease Control Model Code. The court finds that the model code contains no authority for Regulation 3.3 to require a certificate of rental occupancy or the tenants' information that has been disputed in this case.
The court finds that there are residential occupancy limitations contained within the Public Health Code of the Town of Fairfield. Exhibit 7. Rooming houses in Section 9.7 contains a square foot calculation of the maximum occupancy of a dwelling unit. Family occupancy is also measured under Section 7.1 for square footage and under Section 7.2 by the number of sleeping rooms. Section 7.2 seems to contain a stricter standard based upon sleeping area. Section 7.7 limits single family occupancy to "one (1) family, plus four (4) occupants unrelated to the family." Section 7.7 may have been modified by the rooming house rules in Section 9. The Public Health Code of Fairfield contains substantial occupancy and density regulations. Regulation 3.3 is not necessary to put an occupancy limitation into effect. This "occupancy limitation" field is substantially regulated by the Fairfield Public Health Code, the zoning regulations and the court occupancy decisions in effect against the plaintiff.
A majority of the "overcrowding and occupancy" issues arising out of Regulation 3.3 have been in the Fairfield beach area. This area has been the subject of much litigation especially between the neighbors and the students attending area colleges. One enforcement of Regulation 3.3 was made in the year 2000 outside the Fairfield Beach area. The majority of the Regulation 3.3 enforcement efforts were conducted within the Fairfield beach area. 989 and 1019 are located within this Fairfield beach area.
Although this court is not going to discuss the equal protection and constitutionality of Regulation 3.3, it is interesting to note that Regulation 3.3 applies to occupancy enforcement related to rental properties, not single family occupied properties. The irony is that 989 is limited to occupancy to five unrelated individuals and yet when the Ganim family occupied 989 as a single family house, ten individuals resided in the house. At that time and even under Regulation 3.3 the Ganim family had no obligation to furnish occupants' names, ages, relationship and automobile registration numbers.
Regulation 3.3 does not define a "tenant." As such it is vague. How CT Page 6346 long is a guest permitted to stay before they have to sign a CRO Application? When occupancy changes at the end of a semester, does a new CRO have to be obtained? Is Regulation 3.3 only designed for annual compliance? Under what authority does the Health Department control lengthy visitors in a rental house when it has no such authority over visitors in a single family occupied house? If the tenant fails to sign a CRO when the property is not over-occupied, how does that failure to sign have a health or sanitary impact? How does the failure of tenants to sign a CRO Application limit the defendant's right to inspect the property, both interior and exterior, at any reasonable time to determine if health and sanitary violations are present? How can the tenant's failure to sign the CRO Application form impact health or sanitary issues? Can Regulation 3.3 be enforced against a tenant/occupant who does not sign the CRO Application form? Can Regulation 3.3 be enforced against tenants/occupants when only some of the tenants/occupants sign the CRO Application form? If so, against which of those tenants/occupants can the enforcement take place?
The health department has permission from the plaintiff in this case to inspect the property each year; a detailed inspection. Under the circumstances of this case the defendant has the continued right to enforce occupancy regulations without the addition of the disputed CRO required information.
 DISCUSSION OF SPECIAL DEFENSES
The defendant has raised three special defenses which the court must discuss. The first special defense is that the plaintiff's complaint is "failing to state a claim." The court has reviewed the plaintiff's complaint and the plaintiff's complaint does state a claim.
P.B. 10-39(a) provides: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim or of any one or more counts thereof to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or any part thereof." A pleading must allege facts, not just legal conclusions. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." Danbury v. Dana Investment Corp., 249 Conn. 1, 17 (1999). A motion to strike is the proper vehicle to test if the complaint "fails to state a claim." Pratt v. Old Saybrook, 225 Conn. 177, 185 (1993). The first special defense cannot be a substitute for a motion to strike since its filing waives a motion to strike by our rules of practice. P.B. §§ 10-6 and 10-7. A special defense of "failure to state a claim" is not recognized under Connecticut procedure. Silvermine Club v. Appleby, CT Page 6347 Superior Court, judicial district of Stamford-Norwalk of Stamford, Docket No. CV99-01 74372S (October 9, 2001, Hickey, J.) (2001 Ct. Sup. 13867). For the reasons stated the defendant must fail on its first special defense.
The second special defense is that the "plaintiff failed to exhaust its administrative remedies."
 It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. . . . Wallingford Center Associates v. Board of Tax Review 68 Conn. App. 803, 809 (2002).
"The (exhaustion) doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . (W) e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed." (Citations omitted; internal quotation marks omitted.) FishUnlimited v. Northeast Utilities Service Co., 254 Conn. 1, 13 (2000).
There are two exceptions to the exhaustion rule that apply here: (1) "When the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency." OG Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 426 n. 5 (1995) and (2) "Where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed." Id. 426.
In July 2000, appeals were taken by the plaintiff to the Superior Court and the State Health Department in accordance with an issued enforcement notice stating no CRO compliance. The plaintiff withdrew the appeals prior to seeking any relief. No other administrative appeal was filed. No CT Page 6348 other administrative remedies are being sought by the plaintiff. The two exceptions to the exhaustion rule are applicable to these facts. The exhaustion doctrine does not apply when the plaintiff is attacking the validity and constitutionality of the regulation itself. City of Norwichv. Norwalk Wilbert Co., Inc., 208 Conn. 1, 6-7 (1988). This is the relief the plaintiff requested in this lawsuit; Regulation 3.3 is void. The exhaustion doctrine does not apply when the administrative appeal process cannot grant the plaintiff the relief requested. Maresca v. Ridgefield,35 Conn. App. 769, 773 (1994); Cannata v. Dept. of EnvironmentalProtection, 215 Conn. 616, 629 (1990). The defendant has failed to prove its second special defense.
The third special defense is, "the plaintiff has not satisfied all the statutory prerequisites to sue with respect to some or all of its claims." The court does not understand what this special defense means. There is no statutory right of action for the plaintiff to commence this lawsuit and no statute has been brought to this court's attention by the defendant indicating the plaintiff had a statutory prerequisite prior to instituting suit. This is a plain and simple claim by the plaintiff seeking common law remedies that the defendant had overstated its statutory authority. The defendant has failed to prove this third special defense.
The defendant argues in its brief that the plaintiff has no standing to raise privacy concerns of non-party tenants/occupants. The defendant is claiming that the plaintiff is improperly trying to assert constitutional rights, not of itself, but of the tenants/occupants of the two properties. It is a general rule that a litigant may only assert his own constitutional rights or immunities. Donahue v. Southington, 259 Conn. 783,792 (2002). The court has not decided this case on constitutional grounds. The penalty section of Regulation 3.3 applies to the plaintiff as owner of the property. Regulation 3.3 requires the owner to comply with the CRO regulations. The failure of the tenant/occupant to comply with the CRO regulations is the failure of the owner to comply, for without the tenant/occupant information and signature of the tenant/occupant the CRO Application is not complete. The lawsuit filed by the plaintiff is in its capacity as the owner of the two properties and not in a representative capacity for any tenant/occupant. The decision in this case did not require the court to address the constitutional rights of any tenant/occupant. This lawsuit tested only the owner's right to the use of its property for income purposes and compliance with a regulation the owner claimed exceeded statutory authority. Thus, the plaintiff "is clearly basing its claim on its own injury, rather than the injury of . . . some third party. That is a sufficient stake in the outcome of this case to confer standing upon the (plaintiff)." Id. 792. For this additional reason the third special defense must fail. CT Page 6349
The defendant claims that there is statutory authority for the inspection of interior of dwellings. The plaintiff has admitted in its Reply Brief dated January 25, 2002 at page 4: "The Plaintiff does not dispute the Defendant has the power to enforce the State Public Health Code, however, the requirements of Regulation 3.3 are not contained in the State Public Health Code." George W. Ganim, Sr. testified that he does not object to the Town of Fairfield conducting interior inspections of the two properties whether it be the zoning agency on violations of court ordered occupancy restrictions or the health agencies on overcrowding. On page 5 of the Reply Brief the plaintiff admits: "The Plaintiff neither disagrees nor objects to the Defendant conducting an inspection prior to a new tenancy. The Plaintiff has always permitted such an inspection and has no problem continuing to allow same." Therefore, this court finds that the citations by the defendant to various tenement and lodging house inspection statutes are not relevant to the case at hand. General Statutes §§ 19a-355, 19a-356, 19a-363,47a-50, and 47a-54a. The issue is the extent of the authority granted to the defendant by General Statutes § 19a-207.
 CONCLUSION
The court finds the issues for the plaintiff on the first claim, "The enactment of Regulation 3.3 was illegal in that the Town of Fairfield through its Department of Health, exceeded the power granted to it by C.G.S.A. § 19a-207," when it enacted the following portions of Regulation 3.3: "concerning but not limited to the names, ages, relationship or number of persons who will occupy a dwelling unit." The court further finds that the Town of Fairfield through its Department of Health and its Director of Health has prepared an illegal form in page 2 of the CRO Application form requiring tenants' information as to tenants' names, ages, relationships and automobile information. Exhibits 2 and 3.
The above portion of Regulation 3.3 and page 2 of the CRO Application form (Exhibits 2 and 3) are hereby declared void.
BY THE COURT,
 ___________________ TIERNEY, J.