## John Panico *vs.* The Sperry Engineering Company et al.

Third Judicial District, New Haven, June Term, 1931.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued June 3d—decided October 23d, 1931.

*Edith Valet Cook,* for the appellant (plaintiff).

*Frank S. Bergin,* for the appellees (defendants).

HINMAN, J. On September 28th, 1920, the plaintiff suffered a compensable injury consisting of a bruised arm, which became infected. He has received, under a voluntary agreement, as compensation as for total incapacity, one half of his average weekly wages for a period which, up to the time when he made his present application, amounted to five hundred and eighteen weeks. He now has a permanent partial loss of use of his arm to the extent of two thirds of the whole use, and the application is for an additional award based upon permanent partial loss of function. The commissioner ruled that the payments made to him for total incapacity fully discharged all the respondents' liability to pay compensation and that he had no discretion to make any further award.

The plaintiff's rights must be determined by the law in force on the day of his injury; *Preveslin* v. *Derby & Ansonia Developing Co.*, 112 Conn. 129, 142, 151 Atl. 518; but the applicable statutes then in effect (Revision of 1918, § 5351; Public Acts of 1919, Chap. 142, § 7) differ in no respect material to the question before us from those found in the Revision of 1930, §§ 5236, 5237. Section 5236 provides compensation for total incapacity as follows: "If any injury for which compensation is provided under the provisions of this chapter shall result in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to half of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than twenty-one dollars or less than five dollars weekly; and such compensation shall not continue longer than . . . five hundred and twenty weeks." Then follows a list of particular injuries which shall be considered as causing total incapacity. Section 5237 provides compensation for partial incapacity as follows: "If any injury for which compensation is provided under the provisions of this chapter shall result in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to half of the difference between his average weekly earnings before the injury and the amount he is able to earn thereafter. Such compensation shall in no case be more than twenty-one dollars weekly and shall continue during the period of partial incapacity, but no longer than five hundred and twenty weeks. . . . With respect to the following-described injuries compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be half of the average weekly earnings of the injured employee, but in no case more than twenty-one dollars or less than five dollars

weekly." Then follows a list of certain injuries, specified in subsections lettered (a) to (k), with the number of weeks during which compensation is to be paid and the statute then proceeds: "In case the injury shall consist of the loss of a substantial part of a member resulting in a permanent partial loss of use of the member, or, in case the injury shall result in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or loss of the use of, such member or for incapacity or both as shall represent the proportion of total loss or loss of use found to exist."

"Incapacity" as used in the compensation law means incapacity to work, as distinguished from the loss or loss of use of a member of the body. This definitely appears from the provisions of § 5233 of the General Statutes, and is expressed in General Statutes, § 5236, which provides compensation for "total incapacity to work." We herein use the word "incapacity" in the same sense. The intent of the Compensation Act is made much clearer if this meaning of the word is borne in mind. In *Dombrozzi* v. *Gross & Co., Inc.*, 112 Conn. 627, 628, 153 Atl. 780, we recently pointed out the distinction between an award for total or partial incapacity which is based upon loss or impairment of earning power and that for a specific indemnity for one of the injuries enumerated in § 5237, which is based upon the resulting handicap through life by reason of the loss, or loss of the use, of certain members of the body. *Franko* v. *Schollhorn Co.*, 93 Conn. 13, 104 Atl. 495; *Olmstead* v. *Lamphier*, 93 Conn. 20, 22, 104 Atl. 488; *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 104 Atl. 490. This section of the statute provides for compensation of each kind; the first two sentences

quoted deal with compensation to be awarded for partial incapacity resulting in loss or impairment of earning power; and the remainder we have quoted provides specific compensation for the handicap through life resulting from the loss or loss of use of certain members of the body. In this case the permanent injury of the plaintiff does not fall within any of those specified in the section and if he be entitled to an award under it this must be under the last sentence we have quoted, by reason of a "permanent partial loss of function" of a member of his body. The award under this provision in the statute is of the same nature as the specific indemnities provided in the earlier portion of it for the enumerated injuries, differing principally in the fact that the number of weeks during which compensation is to run is not fixed but left to be determined by the commissioner. *Reilley* v. *Carroll,* 110 Conn. 282, 287, 147 Atl. 818.

Previous to 1919 the statute (§ 5352, Rev. 1918) provided that the specific compensation for loss or loss of use of a member, be "in lieu of all other payments." It was held, however, in *Franko* v. *Schollhorn Co.* (1918) 93 Conn. 13, 18, 104 Atl. 495, that this provision referred to "payments for the named injuries" but did not preclude an award, also, for total incapacity to work resulting from injury, to a finger, during the period of attempt to cure the injury and up to the time when the loss occurred, by amputation of phalanges, entitling the claimant to the specific compensation therefor. "When the loss of the member is preceded by a long incapacity while efforts are made to heal and cure the injury, the injured employee has suffered far more than from the mere loss of the member. Compensation for the loss of the member will not compensate him for the period of incapacity preceding the loss of the member. The just rule of

compensation will give compensation for the period of total incapacity as well as for the loss of the member." (p. 19.)

In *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 104 Atl. 490, in which the loss, by amputation, of a phalanx of a finger occurred on the same day as the injury, it was held that compensation could not be awarded for total incapacity following and consequent upon the loss, in addition to the specific indemnity for the loss itself. In *Browne* v. *Stamford Rolling Mills Co.*, 95 Conn. 295, 111 Atl. 215, decided in 1920, but pertaining to an injury sustained in 1916, it was ruled that compensation for incapacity following loss, by amputation, of a foot was included in that given for the loss of the member, and an award of compensation for incapacity was vacated. In *Wrenn* v. *Connecticut Brass Co.*, 96 Conn. 35, 112 Atl. 638, decided in 1921, but applying the law as it existed at the date of the injury in 1915, *Franko* v. *Schollhorn Co.* was re-examined and confirmed and it was held that where an injury resulted in a condition entitling the claimant to a specific indemnity, compensation might be awarded for total or partial incapacity resulting from the injury from the time it occurred until there ceased to be any reasonable expectation of further improvement and that, when this time arrived, the claimant might also receive an award of the specific indemnity for loss of a member. "All reasonable efforts should be used to save an injured arm or limb, and thus prevent the necessity for its amputation, or its complete loss of usefulness. Until the time for such effort has passed, professional skill should be directed to the attempt to effect a cure. When competent professional opinion, upon fair examination, reaches the conclusion, or should reach the conclusion, that it is not reasonable to expect to cure or improve the injured

arm, it can then be said for the first time that the loss of this member has occurred. Then, unless something further must be done to improve or heal the member, there exists the condition described in the statute (§ 5352), 'the complete and permanent loss of the use of one arm,' and the specific compensation provided by statute is then due. But this does not compensate the injured employee for the period between the date of injury and the date of determination of the complete loss of use. The incapacity during this period may have been total or partial, and our Act provides compensation for this period of incapacity as well as for the complete and permanent loss of the use of the arm." (p. 36.)

In 1919, § 5352 (now § 5237) was so amended as to expressly state that the specific compensation for loss or loss of use of a member therein provided for should be "in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation."

In *Costello* v. *Seamless Rubber Co.* (1923) 99 Conn. 545, 550, 122 Atl. 79, which concerned an award for partial incapacity following the original amputation of a finger, we said of the change made by the amendment of 1919: "This addition, so far as it affects the prior construction of the section, provides a more liberal measure of compensation because it obliterates the distinction theretofore drawn between total incapacity preceding and following the loss, and thereby reverses the ruling in the *Kramer* case." It is true that the amendment of 1919 did not change the words "in lieu of other compensation" in the portion of the statute under which the plaintiff claims. But the clear intent expressed elsewhere in the amendment to allow compensation for total incapacity in addition to a specific indemnity and the fact that this portion of

the statute supplied an alternative method for awarding such indemnity to that applied in the case of the specific injuries previously mentioned, requires that this phrase be interpreted to mean, in lieu of other compensation of a like nature, that is, of compensation for such injuries. *Franko* v. *Schollhorn Co., supra,* p. 18. It follows that the award for permanent partial loss of function may, equally with the specific indemnities provided for enumerated injuries, be made at the expiration of the period of the award for incapacity.

As we have seen, the period of total incapacity for which compensation could be awarded in addition to the specific indemnity for loss or loss of use of a member under § 5352 (Rev. 1918) has been held to be that "between the date of the injury and the date of determination of the specific indemnity." *Dombrozzi* v. *Gross & Co., Inc.,* 112 Conn. 627, 632, 153 Atl. 780. It covers the time "while efforts are made to heal and cure the injury." *Franko* v. *Schollhorn Co., supra,* p. 19. It ends when nothing further remains to be done to improve or heal the member. The complete and permanent loss or loss of use occurs "when no reasonable prognosis for complete or partial cure, and no [further] improvement . . . can be reasonably made. Until such time the specific compensation . . . cannot be made." It then became due. *Wrenn* v. *Connecticut Brass Co., supra,* pp. 37, 38. We must assume that in adopting the amendment of 1919 the General Assembly had in contemplation the construction and operation thereby accorded this statute, and that "usual compensation for total incapacity," as employed in the amendment, referred to and signifies the compensation covering the above-mentioned period rather than the separate and distinct compensation provided for by § 5351 (1918), § 5236 (1930).

It is true that in a case of an injury resulting in a loss specified in § 5237 as entitling the claimant to specific compensation therefor, also resulting, in fact, in total incapacity to work for a long period of time, an award made as above indicated, viz.: for total incapacity until the specific compensation becomes due, only, and then the latter, will be less advantageous to him than an award of compensation for total incapacity under § 5236 for the whole period of incapacity, subject to the limit of five hundred and twenty weeks, followed by the specific compensation. On the other hand, the construction contended for by the plaintiff would permit a result involving manifest inconsistency and injustice. A person suffering, through compensable injury, loss of the sight of both eyes, both feet or both hands, one foot and one hand, paralysis of the legs or arms or of one leg and one arm, or imbecility or insanity, can be awarded compensation only under § 5236 for the period of his total incapacity, not exceeding five hundred and twenty weeks. The construction argued in behalf of the plaintiff would give a person losing one arm (providing he suffered total incapacity therefrom) like compensation for such incapacity for five hundred and twenty weeks and, in addition, specific compensation of one half his average weekly earnings for an additional period of two hundred and twenty-five weeks, or in case of partial loss of use of the arm, as here, such proportion of that period of two hundred and twenty-five weeks as represents the proportion of loss of use found to exist—here two thirds. The results of our construction of the statute are, at least, more consistent, practical, and just; the experiences of administration thereunder have produced no further amendments bearing upon this question for more than a decade. If justice re-

quires further adjustments, it is for the General Assembly to devise and make them.

The record does not disclose at what date the condition of the plaintiff's arm reached the stage of ultimate improvement and when, in consequence, the period of compensation for incapacity would have terminated and the right to specific indemnity for proportionate loss of use accrued. It is beyond reasonable possibility, however, that this period continued for such a time that the compensation therefor, plus the specific compensation which the commissioner, within his discretion, could have awarded would, at most, aggregate more than the amount (half of the average weekly wage for five hundred and eighteen weeks) which the plaintiff had already received under the voluntary agreement at the time of his application the decision upon which is appealed from. Therefore no advantage could be expected from further proceedings.

The Superior Court is advised to dismiss the appeal.

In this opinion the other judges concurred.