## VICTOR RAYHALL *v.* AKIM COMPANY, INC., ET AL. (SC 16685)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued January 9—officially released April 29, 2003

*Howard B. Schiller,* for the appellant-appellee (plaintiff).

*Lucas D. Strunk,* for the appellees-appellants (defendants).

*Nathan Julian Shafner* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. The plaintiff, Victor Rayhall, and the named defendant,[1] Akim Company, Inc., respectively, appeal and cross appeal[2] from the decision of the compensa-

[1] Hartford ITT Insurance Group, the workers' compensation insurer for the named defendant, is also a defendant in this action. For purposes of clarity, we refer herein to the named defendant, Akim Company, Inc., as the defendant.

[2] The plaintiff appealed, and the defendant cross appealed, from the decision of the compensation review board to the Appellate Court pursuant to General Statutes § 31-301b. We then transferred the appeal and the cross appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tion review board (board) affirming the decision of the workers' compensation commissioner for the second district (commissioner) that: (1) awarded to the plaintiff retroactive compensation for temporary partial incapacity; and (2) ordered the defendant, pursuant to General Statutes § 31-307 (e),[3] to deduct $1002 per month as a social security offset from prospective compensation to the plaintiff for temporary total incapacity. In his appeal, the plaintiff claims that the offset under § 31-307 (e) discriminates based on total disability status and age in violation of the equal protection clause and his fundamental rights under article first, § 20, of the constitution of Connecticut[4] and the equal protection clause of the United States constitution.[5] In its cross appeal, the defendant claims that the board improperly construed General Statutes § 31-308[6] to require the defendant to

[3] General Statutes § 31-307 (e) provides: "Notwithstanding any provision of the general statutes to the contrary, compensation paid to an employee for an employee's total incapacity shall be reduced while the employee is entitled to receive old age insurance benefits pursuant to the federal Social Security Act. The amount of each reduced workers' compensation payment shall equal the excess, if any, of the workers' compensation payment over the old age insurance benefits."

[4] Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[5] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[6] General Statutes § 31-308 provides in relevant part: "(a) If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, and the amount he is able to earn after the injury, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310,

pay temporary incapacity benefits, rather than permanency benefits, once the plaintiff had achieved maximum medical improvement with respect to one of his injured legs. We conclude that § 31-307 (e) is constitutional. We further conclude that, under § 31-308, an employee sustaining an injury to more than one body part may delay permanency benefits until all injured members achieve maximum medical improvement. Accordingly, we affirm the decision of the board.

The record reveals the following undisputed facts and procedural history. The plaintiff began his career with the defendant as a tool and die maker in 1952. In 1955, the plaintiff left the defendant's employ to pursue

except that when (1) the physician attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) the employee is ready and willing to perform other work in the same locality and (3) no other work is available, the employee shall be paid his full weekly compensation subject to the provisions of this section. Compensation paid under this subsection shall not be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, and shall continue during the period of partial incapacity, but no longer than five hundred twenty weeks. If the employer procures employment for an injured employee that is suitable to his capacity, the wages offered in such employment shall be taken as the earning capacity of the injured employee during the period of the employment.

"(b) With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be seventy-five per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. . . ."

Although a minor change to § 31-308 (b) was made in 2000; see Public Acts 2000, No. 00-8; that change is not relevant to this appeal. For purposes of clarity, we refer herein to the current revision of the statute.

other career advancement opportunities, but returned in 1988 to become the defendant's plant manager. On October 4, 1993, the plaintiff sustained compensable injuries to both of his legs when, while assisting other employees jacking up a trailer, the jack snapped and its handle hit the plaintiff in his lower extremities. Thereafter, the plaintiff returned to work and the defendant assumed liability for the plaintiff's injuries pursuant to a voluntary agreement.

When the plaintiff's condition deteriorated so as to make working difficult, he and the defendant mutually agreed that the plaintiff would file early for social security retirement benefits, for which he would become eligible upon his sixty-second birthday. They further agreed that the plaintiff would continue to work at a reduced salary until his successor could be trained. The plaintiff continued his employment with the defendant at the reduced salary for approximately one year. On April 16, 1996, the plaintiff began to receive his social security benefits.

Subsequently, the plaintiff required knee replacement surgery on his right leg as a result of his deteriorating condition. On March 5, 1999, the plaintiff reached maximum medical improvement with respect to that leg. On October 26, 1999, the plaintiff underwent knee replacement surgery on his left leg.

In June, 2000, the plaintiff and the defendant appeared before the commissioner to contest the extent of the defendant's workers' compensation liability with respect to two different periods of time. The first issue pertained to the defendant's liability between the period of March 5, 1999, the date on which the plaintiff had reached maximum medical improvement with respect to his right leg, and October 25, 1999, the date prior to the day on which the plaintiff had surgery on his left leg. The parties stipulated to the fact that, during the

period at issue, the plaintiff was temporarily partially incapacitated by his left leg injury. The defendant contended, however, that, once the plaintiff's right leg reached maximum medical improvement, irrespective of his status with respect to his left leg, the plaintiff should be considered as having a *permanent* partial disability, not a temporary partial incapacity and, hence, entitled only to a specific indemnity award. Conversely, the plaintiff contended that he was entitled to ongoing *temporary* partial incapacity benefits and the permanency award must be held in abeyance until he attained maximum medical improvement with respect to both legs. The commissioner found that "[a]lthough [the plaintiff's] right leg had reached maximum improvement on March 5, 1999, he remained partially incapacitated because of his left leg condition, which ultimately rendered him totally disabled on October 25, 1999." The commissioner, therefore, ordered the defendant to pay compensation to the plaintiff for temporary partial incapacity for the period between March 5, 1999, and October 25, 1999, with credit for amounts already paid for that period.

The second issue before the commissioner pertained to the defendant's liability for the period after the plaintiff had surgery on his left leg, at which time he became temporarily *totally* incapacitated. Specifically at issue was the offset, pursuant to § 31-307 (e), for social security old age benefits against total disability benefits. The plaintiff contended that the offset violates the equal protection clause of the state and federal constitutions.[7]

---

[7] The plaintiff raised this issue in his proposed findings to the commissioner, expressly reserving for the board's consideration the issue of the constitutionality of § 31-307 (e). Specifically, the plaintiff contended that the statute violates the equal protection clause by requiring an offset for old age social security benefits against total disability benefits, but not for: (1) partially disabled workers who receive old age social security benefits; (2) totally disabled workers who receive retirement benefits from sources other than social security; and (3) all workers who receive retirement benefits unrelated to age.

The commissioner concluded that the workers' compensation commission has no authority, as an administrative tribunal with limited jurisdiction, to declare § 31-307 (e) unconstitutional. Accordingly, the commissioner ordered that the defendant deduct $1002 per month,[8] as a social security offset, from any compensation paid to the plaintiff for total incapacity.[9] Thereafter, the plaintiff appealed from the commissioner's decision to the board, asserting his constitutional challenge to § 31-307 (e). See footnote 3 of this opinion. The defendant cross appealed, claiming that the commissioner improperly had ordered it to compensate the plaintiff for temporary partial incapacity for the period preceding the plaintiff's left leg surgery, notwithstanding the fact that the plaintiff had reached maximum medical improvement on his right leg.

The board concluded that it lacked jurisdiction to consider the plaintiff's constitutional challenge, but affirmed by a majority the commissioner's decision with respect to the defendant's cross appeal. In reaching its conclusion, the board focused on the interrelationship between two sections of the Workers' Compensation Act addressing permanent incapacity—§ 31-308 (b), which entitles an employee suffering a permanent disability to a specified body part to payment of a fixed amount of benefits, and General Statutes § 31-295, which mandates when compensation for permanent

---

[8] The record does not indicate the basis for the amount of the offset, only that the plaintiff was eligible for social security benefits in the amount of $836 per month for himself and an additional $209 for his wife and each of his three children, totaling $1672.

[9] The parties stipulated to the fact that, because the social security offset had not been deducted commencing with the plaintiff's total incapacity status after the surgery on his left leg, an overpayment of benefits had been generated. The parties further stipulated that the plaintiff would not be required to make a repayment, but, rather, that the overpayment would be deducted from compensation owed to the plaintiff for past or future partial incapacity.

incacpacity must be paid. The board focused on language in § 31-295 (c), which provides that an employee entitled to receive compensation under § 31-308 (b) must receive payment "beginning not later than thirty days *following the date of the maximum improvement of the member or members* . . . ." (Emphasis added.) The board concluded that the interpretation that gave the most consistent, substantive effect to the term "or members" was to construe it to mean maximum medical improvement of all members. Under this construction, the board reasoned that an employee suffering injury to multiple body parts could elect a choice of remedies: (1) to receive the specific indemnity award for permanent disability upon reaching maximum medical improvement with respect to one body part and, upon expiration of that award, to receive temporary partial incapacity benefits, if the circumstances so warranted; or (2) to receive temporary partial incapacity benefits until all injured body parts reached maximum medical improvement, at which time the employee would receive the specific indemnity award for his or her permanent disability. One of the three commissioners on the board dissented, focusing in particular on the language in § 31-308 (b) that requires compensation for permanent disability "in addition to the usual compensation for total incapacity *but in lieu of all other payments for compensation* . . . ." (Emphasis added.) That commissioner concluded that this language mandates that, in cases of multiple injuries, an employee must exhaust the permanency award before temporary partial incapacity benefits may become available. This appeal and cross appeal followed.

I

We begin with the issue raised by the plaintiff's appeal, namely, whether the social security offset under § 31-307 (e) is unconstitutional. As a preliminary matter, however, we address the question of whether we have

subject matter jurisdiction over the plaintiff's appeal in view of the fact that the board lacked jurisdiction to reach that issue in the underlying proceedings.[10] Although both parties agree that this court has jurisdiction, "a subject matter jurisdictional defect may not be waived . . . [or] conferred by the parties, explicitly or implicitly." (Citations omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645 (2001); accord *Hayes* v. *Beresford*, 184 Conn. 558, 562, 440 A.2d 224 (1981). "[T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Citation omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 517, 778 A.2d 33 (2001) (*Borden, J.,* concurring).

## A

It is well settled under the common law that adjudication of the constitutionality of legislative enactments is beyond the jurisdiction of administrative agencies. *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 64, 808 A.2d 1107 (2002); *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 343–44, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). Moreover, it is well established that appellate courts lack jurisdiction to consider the merits of a case over which the *trial court* lacked jurisdiction in the first instance. *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 213, 491 A.2d 1096 (1985); *In re Application of Smith*, 133 Conn. 6, 8, 47 A.2d 521 (1946); *Cadle Co.* v. *Ginsburg*, 51 Conn. App. 392, 409, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). In *Giaimo* v. *New Haven*, supra, 257 Conn. 490–92 n.8, this court

[10] Prior to oral argument before this court, we raised the issue sua sponte regarding our jurisdiction over the plaintiff's constitutional claim and asked the parties to be prepared to discuss it in light of statements this court had made in *Giaimo* v. *New Haven*, 257 Conn. 481, 490–92 n.8, 778 A.2d 33 (2001).

raised, but did not answer expressly, the question of whether we have jurisdiction in an administrative appeal to consider a constitutional challenge to the validity of a statute when the agency lacked jurisdiction to consider that issue, noting that the Appellate Court and this court had, in the past, addressed claims raising constitutional issues.[11] See, e.g., *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 306–308, 695 A.2d 1051 (1997); *Tufaro* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 234, 236–37, 587 A.2d 1044 (1991). We now answer that question in the affirmative.

---

[11] In *Giaimo*, the defendant had appealed to the board from a decision by the workers' compensation commissioner for the third district denying the defendant's request to transfer liability to the second injury fund and for a formal hearing to determine whether the plaintiff had a preexisting injury that had contributed to his heart injury. *Giaimo* v. *New Haven*, supra, 257 Conn. 489–90. On appeal to the board, the defendant contended, inter alia, that application of No. 95-227, of the 1995 Public Acts, which was enacted while the administrative proceedings in this case were pending and which eliminated the right to a formal hearing under the revision of General Statutes § 31-349 then in effect, constituted a deprivation of due process in violation of the state and federal constitutions. Id., 490. The board affirmed the commissioner's decision, concluding that it lacked jurisdiction to reach the constitutional question. Id. This court reversed the board's decision on the ground that the procedures under § 31-349, as amended, violated the defendant's due process rights. Id., 492.

We noted in a footnote in *Giaimo*, however, "that a strong argument can be made that, because the commissioner and the board did not have jurisdiction to consider the city's constitutional claim . . . this court does not have jurisdiction to entertain the city's appeal. Thus, it could be argued that the city should be required to challenge the constitutionality of the statute in a declaratory judgment action filed in the Superior Court. We recognize that this court previously has heard an appeal from the board on a constitutional issue. See *Caldor, Inc.* v. *Thornton*, supra, [191 Conn.] 336; see also *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 308–309, 695 A.2d 1051 (1997) (strongly suggesting that this court would hear constitutional challenge to [General Statutes] § 31-349c when claim was ripe). In those cases, however, we did not address the question of why we had jurisdiction to entertain appeals from the board on issues that the board had no jurisdiction to consider." (Citations omitted.) *Giaimo* v. *New Haven*, supra, 257 Conn. 490 n.8. Ultimately, we concluded in *Giaimo* that, because the claim was ripe, the record was adequate for review and considerations of judicial economy weighed in favor of considering the issue, we would address the defendant's constitutional claim. Id., 491–92 n.8.

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996); accord *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 442–43, 797 A.2d 1081 (2002). "It is axiomatic that, except insofar as the constitution bestows upon [an appellate court] jurisdiction to hear certain cases . . . the subject matter jurisdiction of the Appellate Court and of [the Supreme Court] is governed by statute." (Citation omitted; internal quotation marks omitted.) *Conetta* v. *Stamford*, 246 Conn. 281, 289–90, 715 A.2d 756 (1998); accord *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992) ("[j]urisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created" [internal quotation marks omitted]), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Connor* v. *Statewide Grievance Committee*, supra, 443; accord *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989).

The legislature vested this court with the power to hear "all matters brought before it according to law . . . ." General Statutes § 51-199 (a). In the present case, the plaintiff appeals to this court pursuant to General Statutes § 31-301b, which provides that "[a]ny party aggrieved by the decision of the Compensation Review Board upon *any question or questions of law arising in the proceedings* may appeal the decision of the Com-

pension Review Board to the Appellate Court."[12] (Emphasis added.) The statute does not further delineate the meaning of "arising in the proceedings" and there is no legislative history relevant to that issue. To "arise" is defined, however, as "to originate from a source"; Merriam-Webster's Collegiate Dictionary (10th Ed. 1993); "to become operative [or] to present itself." Black's Law Dictionary (6th Ed. 1990). Thus, a question of law "arising" in a board proceeding would comprise not only those issues expressly decided by the board on the basis of its jurisdiction, but also those issues that present themselves in the proceeding or become operative as a result of the board's decision.

Therefore, we conclude that § 31-301b provides a jurisdictional basis for our consideration of the plaintiff's constitutional challenge to the board's decision, despite the board's lack of jurisdiction to consider the matter. An appellant, like the plaintiff here, still must, however, satisfy other prerequisites to jurisdiction, such as the final judgment rule; *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 160, 740 A.2d 796 (1999); standing; *Connecticut Business & Industries Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 729–30, 573 A.2d 736 (1990); exhaustion of administrative remedies; *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 563, 630 A.2d 1304 (1993); and ripeness.[13] *Waterbury* v.

---

[12] As we previously have noted, we transferred the plaintiff's appeal from the Appellate Court to this court pursuant to § 51-199 (c) and Practice Book § 65-1. See footnote 2 of this opinion.

[13] We further note that, even if an appellant demonstrates that the prerequisites to subject matter jurisdiction are satisfied, it is well established that the failure to satisfy nonjurisdictional requirements may preclude review. Specifically, we note that the appellant generally must raise the issue before the board in order to preserve it for appellate review; compare *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 188–87 n.4, 588 A.2d 194 (1991) with *Fellin* v. *Administrator, Unemployment Compensation Act*, 196 Conn. 440, 446, 493 A.2d 174 (1985); and must ensure that the factual record has been adequately developed for review. *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 306–308. Both of these requirements have been satisfied in the present case.

*Washington,* 260 Conn. 506, 543, 800 A.2d 1102 (2002); cf. *Sasso* v. *RAM Property Management,* 431 So. 2d 204, 208 (Fla. App. 1983) (court has jurisdiction to consider appeal raising constitutional challenge to statute despite administrative agency's lack of jurisdiction over issue; court lacks jurisdiction if appellant lacks standing or controversy not ripe), aff'd, 452 So. 2d 932 (Fla.), appeal dismissed, 469 U.S. 1030, 105 S. Ct. 498, 83 L. Ed. 2d 391 (1984). In the present case, these requirements have been satisfied. Accordingly, we consider the merits of the plaintiff's constitutional challenge.

B

The plaintiff claims that the offset under § 31-307 (e) for social security old age retirement benefits against total disability benefits violates his right to equal protection under the federal and state constitutions. The plaintiff contends that § 31-307 (e) unconstitutionally discriminates on the basis of disability, because the offset applies to total disability benefits, but does not apply to partial disability benefits. The plaintiff further contends that § 31-307 (e) unconstitutionally discriminates on the basis of age, because the offset applies only to an age-based retirement benefit, and not other benefits that are nonage-based. We disagree.

1

"We note at the outset that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional . . . ." (Internal quotation marks omitted.) *Donahue* v. *Southington,* 259 Conn. 783, 794, 792 A.2d 76 (2002); accord *State* v. *Wright,* 246 Conn. 132, 138–39, 716 A.2d 870 (1998). "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . . *Heller* v. *Doe,* 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)."

(Internal quotation marks omitted.) *State* v. *Wright*, supra, 139; see also *State* v. *Ball*, 260 Conn. 275, 281, 796 A.2d 542 (2002) (independent review of facts unnecessary in consideration of facial challenge to constitutionality of statute).

In order to analyze the plaintiff's claim, we first must determine the standard by which the statute's constitutional validity will be determined—in other words, the level of scrutiny required. *Donahue* v. *Southington*, supra, 259 Conn. 794; *State* v. *Wright*, supra, 246 Conn. 140. This court has held, in accordance with the federal constitutional framework of analysis, that "in areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368] (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. [432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 885, 792 A.2d 774 (2002); accord *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 144, 717 A.2d 747 (1998). "If, however, state action invidiously discriminates against a suspect class or affects a fundamental right, the action passes constitutional muster . . . only if it survives strict scrutiny." *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993). Under that heightened standard, "the state must demonstrate that the chal-

lenged statute is necessary to the achievement of a compelling state interest." (Internal quotation marks omitted.) *Donahue* v. *Southington*, supra, 794.

It is well settled under the federal constitution that neither disability nor age is a suspect class and, therefore, statutory distinctions based on those classifications are analyzed under the rational basis test. See *Cleburne* v. *Cleburne Living Center, Inc.*, supra, 473 U.S. 446 (physical or mental disability); *Massachusetts Board of Retirement* v. *Murgia*, 427 U.S. 307, 313–14, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (age). Similarly, age is not a suspect class under the Connecticut constitution. *State* v. *McDougal*, 241 Conn. 502, 517, 699 A.2d 872 (1997). Under article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, however, discrimination is prohibited expressly on the basis of physical or mental disability. See footnote 4 of this opinion. Therefore, we have determined that greater protection than that afforded under the federal constitution is required when the state action targets those who are disabled, requiring strict scrutiny. *Daly* v. *DelPonte*, supra, 225 Conn. 513–14; see also *State* v. *Riddick*, 61 Conn. App. 275, 284–85, 763 A.2d 1062, cert. denied, 255 Conn. 946, 769 A.2d 61 (2001).

The plaintiff claims that strict scrutiny must be applied in the present case. Specifically, he contends that this heightened scrutiny is required because the offset under § 31-307 (e) applies only to the totally disabled and, therefore, discriminates against a suspect class, the disabled. We disagree.

In the present case, the offset applies to one subset of the disabled—the totally incapacitated—but not to another subset—the partially incapacitated.[14] We pre-

---

[14] We have not decided previously whether "incapacity," as that term is used in the Workers' Compensation Act, is equivalent to "disability," as that term is used in article first, § 20, of our state constitution, as amended. We

viously have noted that strict scrutiny is required only when a "state action *invidiously* discriminates *against* a suspect class or affects a fundamental right . . . ." (Emphasis added; internal quotation marks omitted.) *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 318, 640 A.2d 101 (1994). The United States Supreme Court has explained, with respect to those "presumptively invidious" classifications; *Plyler* v. *Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); such as alienage and race, that "[t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. . . . *Cleburne* v. *Cleburne Living Center, Inc.*, [supra, 473 U.S. 440] . . . ." (Citations omitted; internal quotation marks omitted.) *Barannikova* v. *Greenwich*, 229 Conn. 664, 676, 643 A.2d 251 (1994). Accordingly, when the state discriminates *against* the disabled, or a class of the disabled, in favor of the able-bodied, invidious discrimination is presumed and strict scrutiny is applied. *Daly* v. *DelPonte*, supra, 225 Conn. 513–14.

On the other hand, when the state discriminates *amongst* members of the protected class, invidious discrimination cannot necessarily be presumed.[15] Indeed, were that the case, strict scrutiny would have to be

assume for purposes of this appeal, without deciding, that the terms are essentially equivalent.

[15] In the past, we have addressed equal protection claims based on discrimination amongst the disabled under a rational basis review. See, e.g., *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 814, 730 A.2d 1149 (1999); *Faraci* v. *Connecticut Light & Power Co.*, 211 Conn. 166, 168–69, 558 A.2d 234 (1989); see also *Keegan* v. *Aetna Life & Casualty Ins. Co.*, 42 Conn. App. 803, 808, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996). In those cases, however, the plaintiff did not contend that strict scrutiny should apply. See, e.g., *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 812 n.15.

applied to every provision of the Workers' Compensation Act, a scheme that entirely predicates the amount and duration of benefits on the type of disability. See General Statutes § 31-275 et seq. It is clear that such distinctions generally are not grounded in considerations that are deemed to "reflect prejudice and antipathy"; *Cleburne* v. *Cleburne Living Center, Inc.*, supra, 473 U.S. 440; but instead reflect a legitimate state interest to provide compensation commensurate with the level of disability. Accordingly, we conclude that, in order for strict scrutiny to apply to a workers' compensation statute that discriminates amongst the disabled, there must be evidence, either on the face of the statute or from its legislative history, that the legislature intended to discriminate invidiously on the basis of disability. See *Benjamin* v. *Bailey*, 234 Conn. 455, 479, 662 A.2d 1226 (1995) ("plaintiffs . . . carry the burden of demonstrating invidious discrimination and of rebutting the presumption of constitutionality"). In the present case, there is no evidence of such an intent. Therefore, we conclude that we must analyze the plaintiff's constitutional challenge under the rational basis test. Cf. *Foti* v. *Richardson*, 30 Conn. App. 463, 469, 620 A.2d 840 (1993) (disparate treatment of plaintiff with autism predicated on absence of mental retardation as basis for ineligibility for services by department of mental retardation; rational basis, rather than strict scrutiny, applied).

2

The plaintiff contends that the offset under § 31-307 (e) fails to satisfy even rational basis review. Specifically, the plaintiff contests the rationality of the lines drawn by the legislature by applying the offset only to the totally disabled—those most in need—but not to the partially disabled. The plaintiff further claims that the scheme lacks a logical foundation because the offset is applied against social security old age benefits, but

not other nonage-based retirement benefits or other benefits.[16] Accordingly, the plaintiff contends that the under inclusiveness of the application of the offset violates the equal protection clause. We conclude that the classifications drawn by § 31-307 (e) have a rational basis and, hence, the offset is not unconstitutional.

In order for a statute to withstand rational basis review, we consider "whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. *Zapata* v. *Burns*, 207 Conn. 496, 507, 542 A.2d 700 (1988); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577, 512 A.2d 893 (1986). . . . [U]nder this analysis, the legislature is not required to articulate the purpose or rationale for its classification. The test . . . is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Donahue* v. *Southington*, supra, 259 Conn. 795–96.

In the present case, § 31-307 (e) was enacted as part of a comprehensive scheme to reform the Workers' Compensation Act. See Public Acts 1993, No. 93-228, § 16. We have noted previously that the principal thrust of these reforms was to cut costs in order to address the spiraling expenses required to maintain the system. See, e.g., *Schiano* v. *Bliss Exterminating Co.*, 260 Conn.

---

[16] In support of his facial challenge to § 31-307 (e), the plaintiff also contends that the offset lacks a rational basis because it applies upon mere *eligibility*, not actual receipt of old age social security benefits. In the present case, the plaintiff is not merely eligible for, but has received, old age social security benefits and, therefore, is not aggrieved by this distinction. Moreover, even if we were inclined to consider the merits of this claim in the context of eligibility, we are unaware of any instance in which a claimant has been aggrieved by application of the offset upon mere eligibility.

21, 40, 792 A.2d 835 (2002); *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 42–43, 787 A.2d 541 (2002); *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 815–16, 730 A.2d 1149 (1999). There is no legislative history referencing any specific intent with respect to the offset, now codified at § 31-307 (e), that might differ from the more general purpose of the reforms. The only legislative history that expressly addresses the offset merely reflects that the legislature was aware of similar offset provisions in other jurisdictions;[17] see 36 S. Proc., Pt. 11, 1993 Sess., p. 3934; and that it considered applying the offset more broadly, but settled on limiting its reach to old age social security benefits applied against total disability benefits.[18] See 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6252–56. There is no recorded explanation of the rationale for limiting the offset in this manner.

[17] Senator Michael P. Meotti noted with respect to the section of Public Act 93-228, § 16, adding the offset provision: "It requires that total disability benefits be reduced by any Social Security retirement benefits received. This also is very common throughout the nation and it's present in the New Jersey, New York and Massachusetts systems currently." 36 S. Proc., Pt. 11, 1993 Sess., p. 3934.

[18] Representative Michael P. Lawlor explained, in discussing an amendment to the Public Act subsequently adopted by the House of Representatives: "I wanted to clarify what exactly is in this amendment and what's not in this amendment because over the past month or so there's been quite a few different amendments floating around and I think there's some confusion about what was in some of those and what's in this one. . . . There are no total disability offsets for unemployment comp[ensation] or for federal workers' comp[ensation] or public or private pension benefits. Those deductions had been in some of the other versions which have been floating around. No offsets of any kind, for partial disability benefits." 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6252–53.

Lawlor continued to explain: "There is no deduction for social security payments which are not paid by certain employees. For example, some Connecticut State Police troopers do not pay into social security. Some of the previous amendments that had been considered would have required a deduction for that amount, even though those employees do not pay into social security." Id., pp. 6254–55.

This court previously has concluded that reducing costs to employers and insurers on the amount of benefits payable under the Workers' Compensation Act is a legitimate goal. *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 248 Conn. 818. Indeed, several other jurisdictions to consider constitutional challenges to offsets under their workers' compensation schemes for social security or other retirement benefits uniformly have concluded that cost saving is a legitimate goal. See, e.g., *Sasso* v. *RAM Property Management*, supra, 431 So. 2d 220; *Pierce* v. *Lafourche Parish Council*, 739 So. 2d 297, 300 (La. App. 1999), aff'd in part, rev'd in part on other grounds, 762 So. 2d 608 (La. 2000); *State ex rel. Boan* v. *Richardson*, 198 W. Va. 545, 548, 482 S.E.2d 162 (1996). Where the jurisdictions have differed is as to whether the classification bears a rational relationship to that goal, or whether it arbitrarily deprives one class of benefits.[19] See, e.g., *Golden* v. *Westark Community College*, 333 Ark. 41, 47–50, 969 S.W.2d 154 (1998) (offset unconstitutional); *Sasso* v. *RAM Property Management*, supra, 220 (offset constitutional); *Berry* v. *H.R. Beal & Sons*, 649 A.2d 1101, 1103 (Me. 1994) (offset constitutional); *Harris* v. *State Dept. of Labor & Industries*, 120 Wash. 2d 461, 479–82, 843 P.2d 1056 (1993) (offset constitutional); *State ex rel. Boan* v. *Richardson*, supra, 550–53 (offset unconstitutional).

---

[19] The principal distinction between those courts that have concluded that the offset provision is unconstitutional and those that have concluded that it survives rational basis review, is whether they characterize the social security benefit as a retirement benefit, as do the former, or a wage replacement, as do the latter. Compare *State ex rel. Boan* v. *Richardson*, supra, 198 W. Va. 549 (concluding that social security retirement benefits are retirement benefits) with *Harris* v. *State Dept. of Labor & Industries*, 120 Wash. 2d 461, 479–80, 843 P.2d 1056 (1993). In our view, however, under the workers' compensation scheme our legislature has adopted, the appropriate focus is not on the characterization of the social security benefits, but, rather, on the characterization of the workers' compensation benefit to which the offset applies and the circumstances that trigger the offset.

We first consider whether it is rational to apply the offset to the totally incapacitated, but not to the partially incapacitated. On its face, § 31-307 (e) would appear to raise serious questions as to whether it is irrational and arbitrary to apply the offset only to one class of the disabled, indeed, those who are most disabled. A rational basis for this distinction becomes apparent, however, when considering this issue in light of the nature of the benefit affected by the offset and the difference between partial and total incapacity under the Workers' Compensation Act generally.

Benefits available under the act serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury. *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 710, 156 A. 802 (1931). Compensation for the disability takes the form of payment of medical expenses; General Statutes § 31-294d; and specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part. *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 25 n.4; see General Statutes § 31-308 (b) (loss of or loss of use of member) and (d) (scarring); see also 4 A. Larson & L. Larson, Workers' Compensation Law (2002) § 80.04, p. 80-12 ("[p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss entirely"). These benefits are unaffected by the offset under § 31-307 (e).

Compensation for loss of earning power takes the form of partial or total incapacity benefits. *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994), overruled in part on other grounds, *Williams* v. *Best Cleaners*, 237 Conn. 490, 492–93, 677 A.2d 1356 (1996); *Rousu* v. *Collins Co.*, 114 Conn. 24, 30–32, 157 A. 264 (1931). Incapacity, as that term is used under the Work-

ers' Compensation Act, "means incapacity to work, as distinguished from the loss or loss of use of a member of the body." *Panico* v. *Sperry Engineering Co.*, supra, 113 Conn. 710. Partial incapacity benefits are available when the employee is "able to perform some employment, but [is] unable fully to perform his or her customary work . . . ." *Hansen* v. *Gordon*, 221 Conn. 29, 39, 602 A.2d 560 (1992); accord *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 182–83 n.1, 801 A.2d 783 (2002). Although an employee who is partially incapacitated may, in fact, not be working, the employee must be available to work, if suitable employment is available. General Statutes § 31-308 (a). Accordingly, partial incapacity benefits are available when an actual wage loss has resulted from the injury, providing a wage supplement for the difference between the wages the worker would have earned, but for the injury, and the wages the worker currently is able to earn. General Statutes §§ 31-308 (a) and 31-308a (a); see also A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2002) § 5.20, p. 694. The duration of partial incapacity benefits is limited by statute. General Statutes §§ 31-308 (a) and 31-308a (a) (duration of lesser of either period of partial incapacity or 520 weeks).

Conversely, total incapacity is defined as "the inability of the employee, because of his injuries, to work at his customary calling *or at any other occupation* which he might reasonably follow. *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 456, 78 A.2d 339 (1951); *Revoir* v. *New Britain*, 2 Conn. App. 255, 259, 477 A.2d 161 (1984)." (Emphasis added; internal quotation marks omitted.) *Mulligan* v. *F. S. Electric*, supra, 231 Conn. 538; see also *Osterland* v. *State*, 135 Conn. 498, 506, 66 A.2d 363 (1949) (worker may be totally disabled if, though able to work at some gainful occupation, he "cannot in the exercise of reasonable diligence find an employer who will employ him"). Total incapacity

benefits, unlike partial incapacity benefits, are unrestricted as to duration.[20] General Statutes § 31-307. Wage replacement benefits for total incapacity are the only benefits subject to the offset. General Statutes § 31-307 (e).

With these facts in mind, we turn to the rationality of the offset under § 31-307 (e). We first note that it was rational for the legislature, by applying the offset only to total incapacity benefits, to target the benefit of unlimited duration, as opposed to the one of limited duration, when determining where to cut costs.[21] More importantly, the legislature rationally could decide to reduce wage replacement benefits for workers who have retired from the workforce. Cf. *Injured Workers of Kansas* v. *Franklin*, 262 Kan. 840, 868–70, 942 P.2d 591 (1997) (Retirement offset "places the worker in the same position as fellow workers who have retired and are drawing old age social security benefits. At that point he is no longer subject to wage loss." [Internal quotation marks omitted.]). Because total disability benefits are of potentially unlimited duration, the legislature rationally could have determined that receipt of old age social security benefits establishes a presump-

---

[20] Under a predecessor to § 31-307, General Statutes (1918 Rev.) § 5351, total incapacity benefits were limited in duration to 520 weeks.

[21] It is noteworthy that, in the same act in which the legislature added the offset to total incapacity benefits under § 31-307 (e) as part of the reform scheme to reduce costs, it also reduced the duration of partial disability benefits under §§ 31-308 and 31-308a. See Public Acts 1993, No. 93-228, § 16. Indeed, in a legislative committee report addressing the impact of reforms to the workers' compensation scheme in 1991 and 1993, the committee explained: "Although the goal of the indemnity changes . . . was the same—to cut costs—the focus was slightly different. [Number] 91-339 [of the 1991 Public Acts] sought to cut costs primarily by reducing a claimant's weekly compensation rate, which . . . is one of the two components used in determining the amount of indemnity benefits that will be paid. The second component, *duration, was the focus of the cost-cutting strategy employed under Public Act 93-228*." (Emphasis added.) Legislative Program Review and Investigations Committee, Workers' Compensation: Impact of the 1991 and 1993 Reforms (December 1995) p. 59.

tion of retirement. With respect to partial incapacity, by contrast, the presumption of retirement is rebutted by the worker's actual employment, as reflected in §§ 31-308 (a) and 31-308a (a).[22]

We recognize that the offset does not provide a precise fit so that it applies *only* to those workers who, irrespective of their injury, would have retired upon eligibility for social security retirement benefits. Under rational basis review of a facial challenge to the constitutionality of a statute, however, we need not find such a precise fit. As we have noted previously, a statute "must be upheld against equal protection challenge if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." (Emphasis added; internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 248 Conn. 817. "[S]o long as the line drawn by the [s]tate is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point." (Internal quotation marks omitted.) Id., 818. We cannot

---

[22] With respect to those who are partially incapacitated, *not* working and receiving old age social security benefits, the issue of retirement may be addressed through means other than the offset under the current scheme. Because a partially incapacitated worker is required to be available for suitable employment; see General Statutes § 31-308 (a); the employer may raise the issue before the commissioner as to whether the receipt of old age social security benefits evinces voluntary retirement. See *Merola* v. *Jackson Newspaper, Inc.*, No. 3344 CRB-3-96-5 (October 27, 1997) ("Although this [board] does not evaluate a claimant's disability by the same standards that the [Social Security Administration (administration)] uses . . . we do recognize that the [administration] does not pay retirement benefits to individuals who are regular members of the work force. . . . The claimant's receipt of Social Security retirement benefits suggests that he now considers himself retired, and it is undisputed that he is no longer looking for work. The commissioner would have been better advised to limit the § 31-308a award to the period of time before the claimant's [sixty-fifth] birthday, and to require the claimant to make a separate showing that circumstances warranted further § 31-308a benefits for any period of time postdating his [sixty-fifth] birthday. Although we do not find reversible error here, this principle should be used as a guide in future cases." [Citations omitted.]).

say that the line drawn in the present case is not rationally supportable.

For similar reasons, we reject the plaintiff's contention that § 31-307 (e) is constitutionally infirm because the offset is applied for social security retirement benefits, but not nonage-based retirement benefits or other kinds of benefits. In our view, the legislature rationally could exclude nonage-based retirement benefits from the offset because one cannot presume that, but for an injury, the worker would have retired upon eligibility for the benefit. Nonage-based retirement benefits are, in many instances, predicated on years of service. See, e.g., General Statutes § 5-192p (tier II disabled state employee qualifies for disability retirement upon ten years of vested service); *Bender* v. *Bender*, 258 Conn. 733, 737, 785 A.2d 197 (2001) (defendant entitled to pension as firefighter upon twenty-five years of service). Accordingly, it is not uncommon for a worker eligible for such benefits to collect retirement benefits from one employer while earning wages from a second employer. With respect to benefits other than retirement benefits, it was rational for the legislature not to apply the offset to those benefits if its goal was to reduce payment of wage replacement benefits for retired workers. Therefore, because the legislature's goal of cost saving was legitimate and the offset is a rational means to achieve that goal, we conclude that § 31-307 (e) is not unconstitutional.

II

We next consider the defendant's cross appeal. The precise issue is whether a claimant who has sustained injuries to two members of the body arising from the same incident must receive compensation for permanent partial disability as soon as the claimant has reached permanent status with respect to one member, even if the claimant is temporarily partially incapaci-

tated with respect to the other member. The defendant in the present case claims that the board improperly determined that it was required to pay temporary partial incapacity benefits to the plaintiff for the period in which the plaintiff had achieved maximum medical improvement with respect to his right leg, but still was temporarily partially incapacitated with respect to his left leg. The defendant contends that §§ 31-308 (b) and 31-295 (c), when read in concert, require that a permanency award be exhausted before temporary partial incapacity benefits may be available. Conversely, the plaintiff contends that the board properly construed §§ 31-308 (b) and 31-295 (c) to permit him to elect either to receive his permanency award first or to exhaust temporary partial incapacity benefits before obtaining the permanency award.

This issue raises a question of statutory construction. It is well settled that we do not defer to the board's construction of a statute—a question of law—when, as in the present case, the provisions at issue previously have not been subjected to judicial scrutiny or when the board's interpretation has not been time tested. *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 422, 815 A.2d 94 (2003); *Marone* v. *Waterbury*, 244 Conn. 1, 9, 707 A.2d 725 (1998). Accordingly, we exercise plenary review.

We begin with the language of the statutes at issue. In examining the relevant language, we are mindful, as was the board in making its determination, of two well settled principles: first, that double compensation is prohibited under the Workers' Compensation Act and, second, that a claimant cannot receive concurrently a specific indemnity award and incapacity benefits for the same incident. *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991).

Section 31-308 (b), which addresses the availability of specific indemnity awards for loss of, or loss of

use of, enumerated members of the body, provides in relevant part: "With respect to the following injuries, the compensation, *in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation*, shall be seventy-five per cent of the average weekly earnings of the injured employee . . . ." (Emphasis added.) The defendant contends that, although, under this section, a worker may be entitled to *total* incapacity benefits prior to receipt of permanency benefits, the statute does not apply similarly when a worker is entitled to temporary *partial* incapacity benefits. We disagree with the defendant that the statute imposes such a limitation.

This court previously has addressed the meaning of this phrase. In *Panico* v. *Sperry Engineering Co.*, supra, 113 Conn. 711, the court explained that, initially, General Statutes (1918 Rev.) § 5352, a predecessor to § 31-308 (b), provided that specific compensation for loss of or loss of use of a member be "in lieu of all other payments," with no reference to total incapacity. The court construed this phrase, consistent with the prohibition on double compensation, to prohibit the payment of other permanency awards for the same incident. Id., 711–12. The court in *Panico* thereafter noted that, in *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 28–29, 104 A. 490 (1918), this court had decided that, where total incapacity *followed*, rather than preceded, the loss of a member, the claimant could not receive total incapacity benefits in addition to the specific indemnity award. *Panico* v. *Sperry Engineering Co.*, supra, 712. In 1919, § 5352 was amended to include the language currently contained in § 31-308 (b) so as to provide expressly that the specific compensation for loss of or loss of use of a member therein provided for should be "in addition to the usual compensation for total incapacity . . . ." (Internal quotation marks omitted.) Id., 713; see Public Acts 1919, No. 142, § 7. Thereafter, "[i]n *Costello* v.

*Seamless Rubber Co.*, [99 Conn. 545, 550, 122 A. 79 (1923)], which concerned an award for partial incapacity following the original amputation of a finger, [this court] said of the change made by the amendment of 1919: 'This addition, so far as it affects the prior construction of the section, provides a more liberal measure of compensation because it obliterates the distinction theretofore drawn between total incapacity preceding and following the loss, and thereby reverses the ruling in the *Kramer* case.' " *Panico* v. *Sperry Engineering Co.*, supra, 713.

In our view, the case law establishes that the phrase "in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation" in § 31-308 (b) merely was intended to prohibit double payment of permanency awards and to address our case law precluding a claimant suffering incapacity following a permanent disability from being able to thereafter collect total incapacity benefits. We find no evidence that the legislature intended, by adding the reference to total incapacity in the 1919 amendment, to address the issue before us in the present case, namely, where two distinct injuries both have not achieved maximum medical improvement, i.e., permanency.

In support of its position, however, the defendant points to § 31-295 (c), which provides in relevant part: "If the employee is entitled to receive compensation for permanent disability to an injured member in accordance with the provisions of subsection (b) of section 31-308, the *compensation shall be paid* to him beginning *not later than thirty days following the date of the maximum improvement of the member or members* and, if the compensation payments are not so paid, the employer shall, in addition to the compensation rate, pay interest at the rate of ten per cent per annum on such sum or sums from the date of maximum improvement." (Emphasis added.) The defendant contends that

this section, when read together with § 31-308 (b), mandates that a permanent disability award be paid as soon as the claimant has reached maximum medical improvement with respect to one member. Conversely, the plaintiff claims that the legislature clearly intended that, when there is more than one injured member, the plaintiff may elect to postpone the permanency award until all injured members have reached maximum medical improvement. The plaintiff further contends that the defendant's interpretation renders the term "or members" superfluous. In response, the defendant contends that this term merely suggests that a claimant could have more than one injured member.

We conclude that, in the absence of relevant legislative history, both parties have proffered plausible interpretations of § 31-295 (c). For the reasons that follow, however, we conclude that the plaintiff's interpretation is the more plausible. First, we note the illogic of a contrary result. It is clear that if, as a result of the condition of his left leg, the plaintiff were temporarily *totally* incapacitated, in other words, unable to work at all, he would be entitled to receive incapacity benefits regardless of whether his right leg had achieved maximum medical improvement. See *McCurdy* v. *State*, 227 Conn. 261, 268, 630 A.2d 64 (1993). We see no logic in treating the plaintiff's temporary partial incapacity in a substantively different manner. Indeed, we have recognized that "[c]ompensation for the loss of the member will not compensate [a claimant] for the period of incapacity preceding the loss of the member. The just rule of compensation will give compensation for the period of total incapacity as well as for the loss of the member." *Franko* v. *Schollhorn Co.*, 93 Conn. 13, 19, 104 A. 485 (1918). This reasoning applies with equal force in the present case.

Finally, we note that our interpretation of this statutory scheme "is guided by the principles underlying

Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose. . . . We, therefore, do not construe the [Workers' Compensation Act] to impose limitations on benefits that the act itself does not specify clearly." (Citations omitted; internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, supra, 259 Conn. 41–42. Because we find nothing in § 31-295 (c) that expressly prohibits the plaintiff from receiving incapacity benefits until both his legs have reached maximum medical improvement, and such a result does not undermine the purpose of the Workers' Compensation Act, we conclude that the board properly determined that the plaintiff is entitled to incapacity benefits until both legs reach permanency status.[23]

The decision of the board is affirmed.

In this opinion the other justices concurred.

---

[23] We note, however, that, although we agree with the board's construction of § 31-308 (b) that the term "or members" means the maximum improvement of all members, there is nothing in the statutory scheme to suggest that a claimant may elect the order in which to receive his or her benefits, choosing to receive first either the permanency benefit or the partial incapacity benefit. Accordingly, we do not endorse the board's reasoning to the contrary.